960 A.2d 795 (2008)
404 N.J. Super. 132
J.A., Plaintiff-Respondent,
v.
A.T., Defendant-Appellant.
DOCKET NO. A-3003-07T4.
Superior Court of New Jersey, Appellate Division.
Submitted September 22, 2008.
Decided December 11, 2008.
*796 Lesnevich & Marzano-Lesnevich, Hackensack, for appellant (Walter A. Lesnevich, on the brief).
Arons & Solomon, Hackensack, for respondent (Marion B. Solomon and Patricia L. Burris, on the brief).
Before Judges LISA, REISNER and SAPP-PETERSON.
The opinion of the court was delivered by
SAPP-PETERSON, J.A.D.
In this custody dispute, defendant A.T. appeals from three orders[1] issued by the Family Part: (1) the June 13, 2007 order directing her to pay $8,500 in pendente lite counsel fees in connection with her May 25, 2007 motion for reconsideration of the court's March 23, 2007 order denying defendant's motion to stay plaintiff's divorce complaint and dismiss plaintiff's custody petition; (2) the January 15, 2008 order denying her motion for registration and enforcement of the order of the One-Member First Instance Court of Athens (First Instance Court) issued April 22, 2004, granting temporary custody of the minor children born of the marriage to her; and (3) the February 13, 2008 order directing her to pay $2,500 in counsel fees to plaintiff's attorney and $900 for trial preparation by Dr. Sharon Ryan-Montgomery, plaintiff's custody expert. We reverse the June 13, 2007 order awarding counsel fees and the February 13, 2008 order directing reimbursement of the expert's trial preparation fee, but otherwise affirm.[2]
Plaintiff and defendant, who are originally from Greece, are both naturalized United States citizens. They married in 1991 in New Jersey and resided in Boonton. They have three children, two of whom were born in New Jersey: A.A., a son, born March 25, 1992, and S.A., a daughter, born July 22, 1993. Their last child, P.A., a son, was born in Greece on July 1, 2000. In 1995, the parties returned to live in Greece where plaintiff pursued a business enterprise with a friend that involved exporting American products to Greece. After a couple of years, the business venture proved unsuccessful, but the parties and their children remained in Greece. Defendant secured full-time employment with the Greek government, for *797 whom she had previously worked. According to plaintiff, in July 2003, based upon an agreement reached by both plaintiff and defendant that the family should return to the United States, he and their two sons, A.A. and P.A., returned to Boonton with the expectation that defendant would eventually join them with their daughter. According to defendant, however, no such agreement had ever been reached. Rather, plaintiff led her to believe that he was only returning to New Jersey for a visit, as he had done in the past, because his parents were there and also for business reasons.
After it became clear to defendant, during a telephone conversation with plaintiff, that he was not returning, defendant filed an application on October 31, 2003, before the First Instance Court seeking temporary custody of all three children.[3] On December 1, 2003, defendant filed a criminal complaint with the District Attorney of the Magistrate's Court of Athens alleging that plaintiff had abducted her two children, was illegally detaining them and threatening to do likewise with respect to their daughter.
A hearing was conducted by the First Instance Court on March 31, 2004. Neither party personally appeared, but were represented at the proceeding by a designated representative. Two witnesses allegedly testified at this proceeding. Defendant submitted an affidavit in support of her application. On April 22, 2004, the Greek court entered an order granting temporary custody to defendant. The court's written decision, incorporated in the order, references its consideration of "the opposing party['s] affidavit[.]" However, plaintiff denies ever submitting a sworn statement in connection with this particular proceeding. The court found that the parties had not reached an agreement that they would return to Boonton, New Jersey, and that Boonton had "minimum [G]reek families and has no Greek school. Thus[,] the children are forced to attend an American school." The court also concluded:
[T]here are no individuals to take care of the children, since the defendant works, his parents are overage and furthermore must also take care the three minor children of his sister who died. On the contrary, the applicant is a capable mother, her parents as well as her sister assist her for [sic] the children's care[.] Subsequently [sic] she is the most appropriate person to take care the children. Moreover, they must continue [t]heir studies at a Greek school as attended also during previous years.[4]
Defendant claims the order granting her temporary custody of the children was served upon plaintiff in Boonton on December 29, 2004. Plaintiff denies that he was ever served with the order. On May 10, 2004, defendant filed a complaint in the First Instance Court for divorce and custody of the three minor children. Then, on February 25, 2005, defendant commenced an action under the Hague Convention on the Civil Aspects of International Child Abduction (Hague ConventionInternational Child Abduction) in federal district court in New Jersey.[5]
*798 On August 14, 2006, plaintiff filed a verified complaint for divorce and, in the complaint, also sought custody of the three children born of the marriage. Defendant claimed that the following month, on September 4, 2006, plaintiff was served with a copy of the divorce complaint that had been filed in Greece two years earlier. Defendant also contended that plaintiff had been served with a copy of the divorce complaint in December 2004. Plaintiff denied ever being served with a divorce complaint. On December 8, 2006, in accordance with the Hague Convention for Service Abroad of Judicial or Extrajudicial Documents in Civil and Commercial Matters, Nov. 15, 1965, 20 U.S.T. 361, T.I.A.S. No. 6638, defendant was served in Greece with a copy of plaintiff's New Jersey's summons and complaint for divorce, custody, child support, equitable distribution, counsel fees and costs.
On January 5, 2007, defendant filed a Notice of Limited Appearance, seeking a stay of plaintiff's divorce complaint and the dismissal of plaintiff's custody application. On March 23, 2007, the court denied defendant's motion, finding that it had subject matter and personal jurisdiction over the divorce action which would proceed concurrently with the Hague Convention International Child Custody action that was pending in federal district court. On May 25, 2007, the court denied reconsideration of the March 23, 2007 order and reserved decision on plaintiff's cross-motion for counsel fees pending resubmission and an updated certification. The court found that defendant "waived any further objections to the exercise of jurisdiction, sufficiency of service or joinder of parties, pursuant to [Rule] 4:6-3, [Rule] 4:6-6 and [Rule] 4:6-7."
On June 13, 2007, the court entered two orders. The first, a consent order, allowed plaintiff to withdraw his April 5, 2007 request to enter default, permitted the court to "have jurisdiction to enter a judgment as to marital status of the parties only[,]" and allowed defendant to file a responsive pleading to plaintiff's "pending Complaint for Divorce within ten (10) days." In the second order, the court awarded counsel fees to plaintiff totaling $8,500. In a statement of reasons included in that order, the court stated:
The decision of May 25, 2007 was an affirmation of the prior decision and it denied defendant's application for reconsideration. The Court applied the principles set forth in [Rule] 5:3-5(c); particularly, (3) the reasonableness and good faith of the positions advanced by the parties and (7) results obtained. The issues are complex as there are three parallel litigations, in Greece, in Federal Court and in this Court. The Court has reviewed the Affidavit of Services and concludes that $7,500.00 is reasonable and appropriate for the firm of Paras, Apy & Reiss, P.C. This firm assumed the primary burden of addressing the international issues and those issues relating to the three separate courts. The firm of Arons & Solomon, P.A., as principal counsel, undertook some efforts in assistance of co-counsel. The Court has specifically not awarded fees to both firms for their appearance in Court as that would be duplicative.
A final judgment of divorce (FJOD) was entered on July 3, 2007. The FJOD expressly incorporated the Greek divorce judgment that the court acknowledged had been entered in Greece on March 25, 2007 and stated that all other issues between the parties "remain[ed] unresolved and subject to adjudication of this Court."
On December 3, 2007, defendant filed a notice of motion seeking to register and enforce the April 22, 2004 Greek custody order, and also seeking the entry of a *799 declaratory order granting custody of all three children to her.[6] On December 21, 2007, plaintiff served a subpoena upon Dr. Ryan-Montgomery to appear as an expert witness at the New Jersey custody trial, which was scheduled for January 14, 2008. A check in the amount of $900 was issued to reserve Dr. Ryan-Montgomery's time to appear at the trial.
Trial commenced on January 15, 2008. The court first addressed defendant's motion to register and enforce the temporary custody order issued by the Greek court. Defendant argued that under principles of comity, the court was obliged to defer to the earlier Greek order because plaintiff had voluntarily submitted himself to the jurisdiction of the Greek court and had filed a counter application for custody. The court disagreed and found that because the record of the Greek proceedings was so lacking in factual findings, the court was not required to defer to the earlier decision.
Just before testimony commenced, the court confirmed that the parties had reached an agreement on the issue of custody as to their son, A.A., and their daughter, S.A., and that the court was being asked to only decide the issue of custody as it related to their son, P.A. Plaintiff testified and produced three witnesses on his behalf. Defense counsel stipulated to the admissibility of the custody evaluation report prepared by plaintiff's expert, Dr. Ryan-Montgomery, in lieu of her testimony. The report cards for the parties' two sons were admitted as joint exhibits. Defendant did not appear for the trial, nor did she produce any witnesses on her behalf or introduce any exhibits. Defense counsel, however, cross-examined the witnesses.
In summation, defense counsel indicated that in view of the court's decision denying defendant's motion to register and enforce the Greek temporary custody order and the evidence plaintiff presented, defense counsel expected that custody would be awarded to plaintiff and therefore focused his argument on whether counsel fees should be awarded. He argued that defendant's actions during the course of the litigation were motivated by good faith and that ultimately the stay of the divorce proceedings that defendant sought, which the court initially denied, was granted when the parties received a trial date on the federal action. Defense counsel further argued that throughout the course of the proceedings, the court never ruled on the validity of the Greek order granting temporary custody. Additionally, defense counsel maintained that the motion for reconsideration was filed in good faith because there in fact had been a mistake, namely, the court, during the March 23, 2007 oral argument, remarked that there was no proof that plaintiff had been served with the divorce complaint, when in fact there was proof of service in the court's file and his file that both he and the court had apparently overlooked. Finally, defense counsel argued that the economic positions of the parties were both "exactly the same."
Plaintiff's counsel's summation addressed both custody and counsel fees. She argued that the proofs presented on plaintiff's behalf addressed all of the statutory factors, set forth in N.J.S.A. 9:2-4(c), which guide courts in custody determinations, and plaintiff had demonstrated the best interest of P.A. was that custody be awarded to plaintiff. On the question of counsel fees, plaintiff's counsel argued that plaintiff's income was nominal, defendant's *800 attorney refused to accept service of the divorce complaint, defendant had not yet paid the pendente lite counsel fee award ordered in June 2007, and plaintiff was required to pay a trial preparation fee for Dr. Ryan-Montgomery, only to be told on the day of trial that there was no objection to the introduction of the report in lieu of her testimony. Plaintiff's counsel also argued that defendant took unreasonable positions during the course of the litigation:
[Defendant] has simultaneously appeared through counsel, argued her case, and objected to jurisdiction.... [Plaintiff] has been required to pay for appearances at motions, early settlement panels, case management conferences, and trial, none of which [defendant] has appeared at.
[Defendant] through counsel agreed to attend mediation. That was an agreement that was done with the assistance of the Court. My office spent a considerable amount of time searching for a Greekspeaking mediator and speaking for aand looking for a Greekspeaking therapist for the children because we were going to try to tie the mediation and the therapy together. And then it didn't happen. She wasn't coming.
At the conclusion of summations, the court directed an inquiry to plaintiff's counsel: "You're asking for two things, the custody decision and the fees. Is that correct?" It was at that time that plaintiff's counsel advised the court, "Well, I'm also asking for Your Honor to address equitable distribution." She advised the court that she was holding approximately $81,000 in her trust account, which represented proceeds from the sale of the former marital home. During the trial, plaintiff testified that the house was a premarital asset and no marital funds were used to maintain it. Defense counsel argued that the increased value of the home as of the date the parties married was subject to equitable distribution. Plaintiff's counsel disputed this position. The court made no findings at that time on the issue of equitable distribution, but did render its oral decision awarding sole legal and physical custody to plaintiff.
Although defense counsel presented no proofs in support of defendant's counterclaim for custody of P.A., the court expressly recognized its obligation to render a decision in the "best interest of the child." The court explained that before rendering its decision, it was obliged "to view all the facts and make a clear decision regardless of whether both sides are represented, by represented I mean present testimony, or not."
The court initially determined that it was not necessary that it conduct an interview with P.A. before reaching its decision because Dr. Ryan-Montgomery had interviewed both boys and the results of those interviews were included in her report, which was introduced into evidence, without objection, in lieu of her testimony. Both boys expressed their strong preference to remain with their father and each other, in the United States, without being pressured by their mother to return to Greece.
The court then considered the relevant statutory factors set forth in N.J.S.A. 9:2-4(c). The court found that both parents were fit and expressed their desire to be awarded custody of P.A. However, given their geographic locations and the refusal of plaintiff to allow A.A. and P.A. to travel to Greece and defendant's refusal to permit S.A. to travel to Boonton, the court determined that it could not expect any cooperation between the parents in making decisions related to P.A.'s well-being. The court concluded that for the past five years, plaintiff and his sons had been living in New Jersey, and plaintiff had provided *801 a stable home environment, which also included his elderly parents with whom both boys enjoyed a close relationship. The court also observed that during the time the entire family lived in Greece, plaintiff had been the primary caretaker for all three children.
The court considered Dr. Ryan-Montgomery's findings that the boys were thriving in their current environment and were successful students. The court also referenced plaintiff's testimony that both boys were involved in extracurricular activities, including music and sports. The court found the school records that were admitted as joint exhibits confirmed Dr. Ryan-Montgomery's findings and plaintiff's testimony that both boys were doing extremely well.
The court expressed that it had no idea how defendant planned to meet P.A.'s emotional, physical, or educational needs since "[s]he's chosen not to come here even though she's aware of the proceedings and has participated through counsel." While the court was confident plaintiff could meet P.A.'s needs, it found that defendant had failed to demonstrate "either [an] ability or willingness to co-parent. She has simply stayed in Greece and objected to the kids being here." The court was therefore satisfied that awarding sole legal and physical custody to plaintiff was in P.A.'s best interest. On February 5, 2008, the court entered an order awarding custody of P.A. to plaintiff and releasing the $81,000 being held in escrow to plaintiff.
In an order dated February 13, 2008, the court directed defendant to reimburse plaintiff for Dr. Ryan-Montgomery's $900 trial preparation fee and awarded plaintiff $2,500 in counsel fees. In the statement of reasons incorporated in the order, the court found that had defense counsel advised his adversary and the court within a reasonable period of time that he would not object to the admissibility of Dr. Ryan-Montgomery's report in lieu of her appearance, plaintiff would not have incurred this cost and the court would not have had to "set aside as much time for trial as it had."
As to counsel fees, the court found that defendant failed to proceed in good faith regarding her claimed entitlement to equitable distribution of the $81,000 because she failed to submit a case information statement, failed to appear at trial to provide testimony and otherwise failed to present any evidence to dispute this claim. The judge concluded that "[d]efendant simply required plaintiff to present its proofs and the Court to spend its time and efforts reaching a decision which was inevitable." The court viewed defendant's conduct during the course of the litigation as unreasonable and as a justification for the award of the $2,500 in counsel fees. The present appeal followed.
On appeal, defendant raises the following points for our consideration:
POINT I
THE SUPERIOR COURT ERRED BY REFUSING TO DEFER THE JURISDICTION OF THIS MATTER TO THE REPUBLIC OF GREECE AND ENFORCE THE RULINGS OF THE COURTS OF THE REPUBLIC OF GREECE.
A. REPUBLIC OF GREECE HAS PREFERENTIAL JURISDICTION TO DETERMINE [THE] CUSTODY OF [P.A.]
B. THE RULINGS OF THE COURTS OF THE REPUBLIC OF GREECE DO NOT OFFEND PUBLIC POLICIES OF NEW JERSEY.
POINT II
THE SUPERIOR COURT ERRED IN AWARDING COUNSEL FEES TO PLAINTIFF-APPELLEE BECAUSE *802 PLAINTIFF-APPELLEE FAILED TO COMPLY WITH THE REQUIREMENTS OF N.J.S.A. 2A:34-23 AND THEREFORE THE AWARD OF COUNSEL FEES SHOULD BE REVERSED.
A. THE SUPERIOR COURT FAILED TO PROPERLY CONSIDER THE FINANCIAL CIRCUMSTANCES OF THE PARTIES WHEN AWARDING COUNSEL FEES.
B. THE SUPERIOR COURT FAILED TO PROPERLY CONSIDER THE BAD FAITH STANDARD WHEN AWARDING COUNSEL FEES.

I.
Under the Uniform Child Custody Jurisdiction and Enforcement Act, N.J.S.A. 2A:34-53 to -95[7] (the Act), a New Jersey court has jurisdiction to make an initial custody determination only if
(1) this State is the home state of the child on the date of the commencement of the proceeding ...;
(2) a court of another state does not have jurisdiction under paragraph (1) of this subsection ... and
(a) ... the child and at least one parent or a person acting as a parent have a significant connection with this State other than mere physical presence; and
(b) substantial evidence is available in this State concerning the child's care, protection, training and personal relationships;
....
b. Subsection a. of this section is the exclusive jurisdictional basis for making a child custody determination by a court of this State.
[N.J.S.A. 2A:34-65(a)(1)-(2).]
The Act also expressly provides that the term "state" used in the Act includes foreign nations. N.J.S.A. 2A:34-57(a). New Jersey courts are to give full faith and credit to child custody orders issued from foreign nations except when "the child custody law of a foreign country violates fundamental principles of human rights or does not base custody decisions on evaluation of the best interests of the child." N.J.S.A. 2A:34-57(c). See VanHaren v. VanHaren, 171 N.J.Super. 12, 22-23, 407 A.2d 1242 (App.Div.1979) (declining to enforce a South Carolina order awarding a father permanent custody of his children because awarding permanent custody to mother was in the children's best interest).
Here, there was never any dispute that at the time plaintiff filed the divorce action in September 2006, the court had jurisdiction to make an initial custody determination because P.A. had been living in Boonton with plaintiff and his brother for the past three years. On the other hand, it is equally undisputed that at the time defendant sought temporary custody of P.A., along with the two other children, in the Greek court, P.A. had been residing in Greece continuously for the past eight years except for the three months that preceded the filing of the emergency application for temporary custody. In deciding it had jurisdiction to consider the custody dispute, the trial judge never resolved whether plaintiff had notice of the Greek custody proceeding, whether he had voluntarily subjected himself to the jurisdiction of the Greek court and filed a counter application for custody. Rather, the judge concluded that without a sufficient factual record by which to determine how the Greek court reached its decision and what *803 factors it considered, the court could not determine whether the proceeding comported with fundamental principles of human rights or included an evaluation of the best interest of the children.
In Sensient Colors v. Allstate Ins. Co., 193 N.J. 373, 386, 939 A.2d 767 (2008), the Court reiterated that "New Jersey has long adhered to `the general rule that the court which first acquires jurisdiction has precedence in the absence of special equities.'" (quoting Yancoskie v. Del. River Port Auth., 78 N.J. 321, 324, 395 A.2d 192 (1978)). Thus, the question here is not whether the trial court, under the Act, had the power to exercise jurisdiction over the parties' custody dispute, but whether the court should have restrained itself in view of the prior order issued by the Greek court.
Application of the first-filed doctrine is not inflexible and, in appropriate circumstances, may yield to "special equities" if application of the doctrine "would contravene the public or judicial policy of the forum state." City of Philadelphia v. Austin, 86 N.J. 55, 64, 429 A.2d 568 (1981). See also Gosschalk v. Gosschalk, 48 N.J.Super. 566, 579, 138 A.2d 774 (App. Div.) (noting that a trial court is not under any "compulsory duty ... to stay a proceeding pending before it" because a similar cause of action was first instituted elsewhere), aff'd o.b., 28 N.J. 73, 145 A.2d 327 (1958).
N.J.S.A. 9:2-4(c) provides in pertinent part:
In making an award of custody, the court shall consider but not be limited to the following factors: the parents' ability to agree, communicate and cooperate in matters relating to the child; the parents' willingness to accept custody and any history of unwillingness to allow visitation not based on substantiated abuse; the interaction and relationship of the child with its parents and siblings; the history of domestic violence, if any; the safety of the child and the safety of either parent from physical abuse by the other parent; the preference of the child when of sufficient age and capacity to reason so as to form an intelligent decision; the needs of the child; the stability of the home environment offered; the quality and continuity of the child's education; the fitness of the parents; the geographical proximity of the parents' homes; the extent and quality of the time spent with the child prior to or subsequent to the separation; the parents' employment responsibilities; and the age and number of the children.
[N.J.S.A. 9:2-4(c).]
A trial court must not only consider these statutory factors before making a custody determination but must also make a record referencing the statutory factors it has considered and the reasons for its custody determination. Gubernat v. Deremer, 140 N.J. 120, 139, 657 A.2d 856 (1995) (citing In re Baby M., 109 N.J. 396, 453 n. 17, 537 A.2d 1227 (1988)). Superimposed upon the consideration of these factors is the ultimate determination that the custody decision reached by the court be guided by the "best-interest-of-the-child" standard:
The "best-interest-of-the-child" standard is more than a statement of the primary criterion for decision or the factors to be considered; it is an expression of the court's special responsibility to safeguard the interests of the child at the center of a custody dispute because the child cannot be presumed to be protected by the adversarial process.
[Kinsella v. Kinsella, 150 N.J. 276, 317-18, 696 A.2d 556 (1997).]
Here, the Greek proceeding arose from an emergent application. In its written *804 decision granting defendant temporary custody, the Greek court referenced the fact that Boonton had "minimum [G]reek families and has no Greek school[,]" the children were forced to attend American schools, there was no one to take care of the children, the plaintiff worked and his parents were too old to take care of the children. The decision described defendant as a "capable mother," noted that her parents and her sister assisted her with her child care needs, and that the children could continue with their Greek studies as they had done in the past. Assuming that these findings represent the Greek equivalent of a "best-interest-of-the-child" determination, they fall woefully short of the factors our Legislature has mandated that New Jersey courts consider in making custody determinations. See N.J.S.A. 9:2-4(c). Moreover, what evidence was submitted, the reliability of that evidence, and how the Greek court evaluated the evidence in reaching its conclusions is not set forth in the decision.
Further, the decision of the Multi-Member First Instance Court of Athens issued March 27, 2007, granting a judgment of divorce by default, did not address child custody, despite the fact that defendant sought a determination of this issue in her petition. Rather, the court "accept[ed] the complaint of [defendant,]" ordered that the "marriage of the litigants is untied," and imposed "on the defendant the legal fees of the claimant[.]" Thus, no final determination of custody was ever reached by the Greek court.
In our view, the absence of a permanent custody determination by the Greek court and the absence of any record of the Greek court's consideration of the statutory factors, as outlined in N.J.S.A. 9:2-4(c), when it rendered its temporary custody decision, contravenes the public policy of this state to safeguard the interests of children who are at the center of a custody dispute. Ibid. We are not unmindful, and apparently nor was the trial court, that the record suggests that plaintiff may have engaged in forum shopping. Nonetheless, the overriding objective of the court must be "the best interests of the child." Here, this consideration and the absence of a thorough record of the Greek proceeding led the trial court to properly conclude no deference should be accorded to the Greek custody determination. We are satisfied that "special equities" militated against according deference to the temporary custody determination by the Greek court. City of Philadelphia v. Austin, supra, 86 N.J. at 64, 429 A.2d 568.

II.
[Point II omitted at the court's direction. See n. 2, supra.]

III.
In summary, we affirm the court's January 15 order denying registration and enforcement of the April 22, 2004 order issued out of the Greek court awarding temporary custody of the three children to defendant, and that part of the February 13, 2008 order awarding $2,500 in counsel fees to plaintiff. We reverse that part of the June 13, 2007 order awarding counsel fees in connection with defendant's motion for reconsideration of the court's March 23, 2007 order denying defendant's motion to stay the divorce complaint and to dismiss plaintiff's custody application and that part of the February 13, 2008 order directing defendant to reimburse plaintiff for the $900 expert trial preparation fee.
Affirmed in part, reversed in part.
NOTES
[1] Defendant has not briefed her appeal of the trial court's orders concerning equitable distribution and change of the children's surnames. We therefore deem these issues waived.
[2] Part II of our opinion, addressing counsel fees and reimbursement of the expert's trial preparation fee, does not warrant publication and therefore has been omitted from the published version. See R. 1:36-2(d).
[3] During the course of the New Jersey litigation, plaintiff claimed that he was unaware of the nature of the legal proceeding before the First Instance Court and simply asked his accountant to look into the matter. He also claimed that unbeknownst to him, his accountant retained counsel to file a counter application for temporary custody of the three children.
[4] This is a certified exact translation from the original Greek decision into English.
[5] More than two years later, on July 23, 2007, this action was dismissed by the consent of the parties.
[6] The notice of motion mistakenly lists the date of the order as March 31, 2004, which was actually the date of the hearing on the emergency custody application.
[7] As amended, effective December 13, 2004, the Act replaces its predecessor, the Uniform Child Custody Jurisdiction Act (UCCJA), N.J.S.A. 2A:34-28 to -52.