51 A.3d 146

SADIA SAJJAD, PLAINTIFF–APPELLANT, v. SAJJAD AHMAD
CHEEMA, DEFENDANT–RESPONDENT.

Superior Court of New Jersey
Appellate Division

Submitted March 21, 2012—Decided August 30, 2012.

162

Before Judges CUFF, LIHOTZ and ST. JOHN.

*Paras, Apy & Reiss, P.C.*, attorneys for appellant (*Patricia E. Apy*, of counsel and on the briefs; *Elissa A. Gross*, on the briefs).

*Ceconi & Cheifetz, LLC*, attorneys for respondent (*Cary B. Cheifetz*, of counsel and on the brief; *Nancy C. Richmond* and *Heather C. Keith*, on the brief).

The opinion of the court was delivered by

LIHOTZ, J.A.D.

Incident to the divorce of these parties to an international marriage, we review a jurisdictional dispute as it relates to custody of the parties' child, considering the application of the Uniform Child Custody Jurisdiction and Enforcement Act (UC-CJEA), *N.J.S.A.* 2A:34–53 to –95, and the doctrine of comity. Plaintiff Sadia Sajjad filed her dissolution complaint in New Jersey following the initiation of divorce and custody proceedings in Pakistan by defendant Sajjad Ahmad Cheema. The trial court dismissed plaintiff's divorce complaint with prejudice because a divorce had been granted in Pakistan. The collateral issues,

including equitable distribution, alimony, and custody were dismissed without prejudice pending finalization of pre-existing custody litigation in Pakistan. We reverse and remand.

I.

The parties solemnized their arranged marriage in a religious ceremony in Lahore, Pakistan on November 12, 2000. Their only child was born in the United Kingdom in the Spring of 2003.

Defendant, a financial analyst for Deutsche Bank, was promoted to "the position of Global Head of Exposure Management," and placed "on a temporary [i]nternational [a]ssignment based in the United States of America" requiring the parties' relocation to the United States. In July 2007, the family moved to Edgewater and enrolled the child in a school in Ridgefield.

The entire family applied for and received permanent residency cards, effective July 6, 2007. In May 2009, defendant learned he would be transferred to Deutsche Bank's United Kingdom office as of October 2009. On June 7, 2009, plaintiff and the child left for Lahore, Pakistan.

Thereafter, the facts surrounding the parties' intentions and expectations are hotly disputed. In the proceeding before the Family Part, defendant submitted documentation suggesting he was a permanent domiciliary of the United Kingdom, and an "expatriate on a temporary assignment" to the United States. Defendant argued plaintiff and the child moved to Pakistan in the summer of 2009, intending to join him in the United Kingdom with no expectation of returning to the United States. He supported this with documents showing the child discontinued his Arabic/Islamic education in April 2009; stopped attending Islamic Tae Kwon Do in May 2009; and was withdrawn from his Ridgefield elementary school on June 3, 2009, because "the family w[ould] be relocating abroad." Defendant noted once in Pakistan, plaintiff and the child lived with her parents, she stored her jewelry in a local bank safe deposit box, and enrolled the child in school.

Plaintiff refutes most of defendant's contentions, insisting her trip to Pakistan was an annual family visit and she and defendant had every expectation of returning to the United States at the conclusion of defendant's assignment in the United Kingdom. She disavows knowledge of the child's withdrawal from school, religious education, and "religion-based physical training" classes. To support her position, she offered a letter from Deutsche Bank written to secure the child's reentry to the United States in September 2009. The letter states:

> [The child] is a lawful permanent resident of the United States. [Child]'s father, ... is also a lawful permanent resident of the United States and will be completing a temporary foreign assignment at Deutsche Bank in London, England, United Kingdom....
>
> It is anticipated that [defendant] will remain in London for approximately two years. Upon completion of his temporary assignment, he will return to the United States to continue his employment with Deutsche Bank.

Plaintiff maintains the Pakistani arrangements were temporary, as evinced by the fact she and the child requested reentry to the United States on September 10, 2009. She noted defendant intended to return to the United States, since before leaving for the United Kingdom, he requested a reentry permit and only now suggests the documents were "to ease [the] transition in case Deutsche Bank UK assigned [him] to the United States in the future."

In any event, the family's return to New Jersey was brief. On September 18, 2009, the parties notified their landlord of their intent to vacate their apartment because they were "moving to another country." They cancelled their cable television service on September 23, 2009, sold their car on September 24, 2009, and on September 25, 2009, executed change of address forms submitted to the Department of Homeland Security listing, as their new permanent address, defendant's uncle's Vienna, Virginia address. On September 26, 2009, defendant left the United States for London. Defendant renewed his United Kingdom driver's license and Pakistani government identification card for Pakistanis living overseas, each reflected his United Kingdom address. Plaintiff traveled to Virginia, then left the United States for Pakistan on

October 11, 2009, expecting to shortly join defendant in the United Kingdom.

Defendant visited his family in Pakistan on November 27, 2009. He claimed plaintiff refused to let him see the child and "threatened to abscond with [the child] to the United States and file false claims against [him] so that [he] could never see [the child] again." Plaintiff disputes these contentions, maintaining the family was together in her parents' home, during which defendant continued "to buy [her] gifts and jewelry[,] ... go to dinner ... [and] engage in marital relations."

On December 10, 2009, defendant filed a custody complaint with the Guardian and Wards Court in Lahore, Pakistan. The complaint was accompanied by defendant's application to place the child's name on the "exit control list," which prevented departure from Pakistan. On December 11, 2009, defendant initiated divorce proceedings in Pakistan then, the next day, returned to the United Kingdom. Plaintiff received notice of these proceedings in Pakistan on December 16, 2009.

Plaintiff returned to the United States on December 22, 2009, leaving the parties' child in the care of her parents in Lahore, Pakistan. She resided with her brother in Piscataway, and designated a different brother, who lived in Lahore, as her attorney-in-fact to participate on her behalf in the divorce and custody proceedings pending in that country's courts.

Plaintiff filed a challenge to the jurisdiction of the Guardian and Wards Court. On January 13, 2010, the reviewing judge concluded the exercise of jurisdiction was proper, finding "it [was] crystal clear that the minor [child] ordinarily reside[d] in Pakistan" in light of his physical presence in the country, his enrollment in a Pakistani school, and other contacts with the country, including the parties' marriage and pending divorce. Plaintiff appealed. The proceedings were stayed pending review by the District Court.

In a written opinion dated March 12, 2010, the district judge set aside the order of the Guardian and Wards Court, concluding the court lacked jurisdiction to consider defendant's request for custody of the parties' child. The District Court explained the child was born in the United Kingdom, educated in New Jersey, and held a residency visa from the United States. Moreover, the court noted plaintiff lived in the United States, defendant lived in the United Kingdom, and the child "has been made [a] scape goat [sic] and left at the mercy of remote relatives in Pakistan," which was "very badly [a]ffect[ing his] personality and would cause irreparable loss to his educational career." Accordingly, defendant's action was dismissed.

Defendant appealed the District Court's determination to the Lahore High Court. In that matter, plaintiff's counsel represented the child would remain in Pakistan and the Lahore High Court "suspended" the District Court's judgment, pending its review.

On December 16, 2009, and March 19, 2010, plaintiff's attempts to remove the child from Pakistan were thwarted by airport immigration officials because the child's name remained on the exit control list. On July 22, 2010, the intervention of United States Congressman Frank J. Pallone, Jr. secured the removal of the child's name from the exit control list and the child was returned to the United States. The child continues to reside with plaintiff in New Jersey.

Defendant requested the Lahore High Court order the child's return to Pakistan, reinstate the child's name on the exit control list, and initiate criminal charges against plaintiff for the child's unlawful removal. On August 4, 2010, the Lahore High Court granted defendant's request and ordered the child's return until the custody matter was concluded. Additionally, the Lahore High Court enjoined plaintiff "from initiating any legal proceedings in American jurisdiction" pending final disposition of the Lahore proceedings.

Contemporaneous to contesting the custody proceedings, plaintiff challenged the jurisdiction of the Chairman Arbitration Coun-

cil to consider defendant's complaint for divorce. First, the Chairman rejected plaintiff's assertion regarding lack of notice, finding notice of the proceedings was delivered by registered mail, express courier service, as well as public notice in a "renowned newspaper in Pakistan[.]" Second, the Chairman found no flaw in the procedures initiating the proceeding, noting both parties were in Pakistan at the time the divorce complaint was filed. In his determination, however, the Chairman appeared to rely upon the initial jurisdictional determination by the judge of the Guardian and Wards Court; a decision that was later overturned. Plaintiff appealed, requesting a stay of the divorce proceedings pending appeal of the Chairman Arbitration Council's jurisdictional determination. The Lahore High Court entered a stay of the divorce proceedings on February 25, 2010.

Plaintiff also initiated a matrimonial proceeding in the Superior Court, by filing a January 25, 2010 complaint seeking dissolution of the marriage, custody of the child, child support, equitable distribution, and other relief. On defendant's motion, the complaint was dismissed without prejudice on June 11, 2010, "for lack of personal jurisdiction due to the failure of the [p]laintiff to properly serve the [d]efendant and file an appropriate Affidavit of Service."

On June 17, 2010, plaintiff filed a second complaint for divorce and other relief and attempted personal service upon defendant in the United Kingdom. When service efforts were unsuccessful, she obtained an order permitting her to "serve [d]efendant with a copy of the summons and complaint, via International Registered Mail and regular mail, at his last known address in London ... [and] by publication of notice in *The Times* of London." Defendant claims plaintiff returned to Pakistan on March 14, 2010, and remained there until July 22, 2010.

There may be gaps in the record; however, we know the Lahore High Court vacated the stay of the divorce proceedings when informed plaintiff left Pakistan. The Chairman Arbitration Council issued a divorce certificate on September 6, 2010, setting

the effective date of divorce as March 10, 2010. The divorce was certified by the Pakistani government on September 21, 2010. At argument we were advised the Lahore High Court has not made a final jurisdictional determination in the custody proceeding. Defendant continues to press his claims regarding plaintiff's alleged illegal removal of the child from the country.

In New Jersey, defendant moved to dismiss the pending matrimonial action on January 5, 2011, arguing the State lacked jurisdiction because divorce was granted in Pakistan. Moreover, he insisted the Pakistani courts were considering his custody complaint and the Family Part should defer to this prior custody proceeding. Plaintiff responded and filed a cross-motion seeking pendente lite child support and alimony and an order granting her temporary custody of the child.

The Family Part judge granted defendant's application and dismissed plaintiff's complaint, concluding the marriage had been "dissolved by a court of record in another country where both parties are citizens." However, as to the issue of custody, parenting time and child support, the judge noted

both parties are adequately represented in the Pakistani courts, both parties are actively litigating in a court of record in Pakistan ... both parties have full access to an appellate process, because I can see it's been used to some degree, both parties are actively contesting all the issues, including jurisdiction, none of which have resulted in any kind of final determination. And ... evidently one of the potential outcomes, as a result of [plaintiff] taking the child out of the country ... may be an international warrant for her, I don't know. I mean, I haven't seen one. I'm not saying it's going to happen, but at this point I'm not going to interfere with that.

The Pakistani litigation is going to come to a conclusion ... and the parties can litigate it there. And then when we actually have a final determination, if any of these arguments still have resonance to [plaintiff], you can bring them before this [c]ourt, but I'm not going to step in the middle of an ongoing proceeding in which everybody's voluntarily participating in Pakistan represented by counsel. So . . . I'm going to dismiss the matter without prejudice, not to be refiled until the matter is determined in Pakistan.

. . . .

... [A]s far as I'm concerned, there is no marriage, it's dissolved, which doesn't mean there may not be issues of custody, visitation and parenting time.... [B]ut those are being actively litigated in Pakistan and I think ... under the doctrine of comity, ... this [c]ourt ought to defer until that litigation is concluded.

The judge's determinations were memorialized in a March 3, 2011 order, amended on March 15, 2011. Plaintiff's request for divorce was dismissed with prejudice and the remaining claims were dismissed without prejudice "until such time as the Pakistani Court hearing the remaining matters renders a final determination." Plaintiff's motion for reconsideration was denied on May 4, 2011. This appeal challenges this order.

## II.

On appeal, plaintiff presents legal questions for our de novo review. *See Manalapan Realty, L.P. v. Twp. Comm. of Manalapan,* 140 *N.J.* 366, 378, 658 *A.*2d 1230 (1995) (stating appellate courts are not bound by "[a] trial court's interpretation of the law and the legal consequences that flow from established facts").

Plaintiff first maintains she satisfied the statutory prerequisites for jurisdiction, as outlined in the UCCJEA. She argues the trial court erred in not conducting an evidentiary hearing, which would have considered her assertion and issues regarding whether New Jersey was a more convenient forum. *N.J.S.A.* 2A:34–71. Defendant counters, suggesting analysis of the UCCJEA supports his assertion New Jersey lacks subject matter jurisdiction. Alternatively, he argues if the analysis favors exercising jurisdiction, the New Jersey court must decline to do so because plaintiff "abducted the child [taking him] to New Jersey in direct violation of Pakistani orders."

The UCCJEA governs the determination of subject matter jurisdiction in interstate, as well as international, custody disputes. *Greely v. Greely,* 194 *N.J.* 168, 178, 943 *A.*2d 841 (2008). *See also Poluhovich v. Pellerano,* 373 *N.J.Super.* 319, 352, 861 *A.*2d 205 (App.Div.2004) (addressing subject matter jurisdiction under the Uniform Child Custody Jurisdiction Act (UCCJA), *N.J.S.A.* 2A:34–28 to –52, the predecessor of the UCCJEA), *certif. denied,* 183 *N.J.* 212, 871 *A.*2d 90 (2005). The UCCJEA was enacted in an effort "to avoid jurisdictional competition and conflict" between jurisdictions in favor of "cooperation with courts of

other states [or other countries] as necessary to ensure that custody determinations are made in the state that can best decide the case." *Griffith v. Tressel*, 394 *N.J.Super.* 128, 138, 925 *A.*2d 702 (App.Div.2007). When confronted with a child custody complaint involving competing interstate or international jurisdictional claims, the Family Part must examine and follow the multi-step procedure outlined in the UCCJEA. *Poluhovich, supra,* 373 *N.J.Super.* at 357, 861 *A.*2d 205.

When undertaking a jurisdictional analysis, the UCCJEA treats a foreign sovereign "as if it were a state of the United States ... if the foreign court gives notice and an opportunity to be heard to all parties before making child custody determinations." *N.J.S.A.* 2A:34–57a. *See also Innes v. Carrascosa,* 391 *N.J.Super.* 453, 482, 918 *A.*2d 686 (App.Div.) (explaining similar defenses under the UCCJA), *certif. denied,* 192 *N.J.* 73, 926 *A.*2d 857 (2007). One exception obviating compliance with the UCCJEA occurs "if the child custody law of a foreign country violates fundamental principles of human rights or does not base custody decisions on evaluation of the best interests of the child." *N.J.S.A.* 2A:34–57c. *See also* UCCJEA § 105, Commissioner's Official Comment, 9 *U.L.A.* 662 (1999).[1]

■ The UCCJEA prioritizes the use of the child's "home state," as the exclusive basis for jurisdiction of a custody determination, regardless of the residency of the parents.[2] *Dalessio v. Gallagher,* 414 *N.J.Super.* 18, 26, 997 *A.*2d 283 (App.Div.2010); *In*

---

[1] An identical concept is found in Section 20 of the Hague Convention on the Civil Aspects of International Child Abduction, Oct. 25, 1980, *T.I.A.S.* No. 11670, 1343, *U.N.T.S.* 49 ("the *Convention* ") (reprinted at 51 *Fed.Reg.* 10494 (Mar. 26, 1986)).

[2] The best-interests analysis used by the UCCJA is no longer applicable to a jurisdictional determination. *Poluhovich, supra,* 373 *N.J.Super.* at 366, 861 *A.*2d 205. "[T]he UCCJEA completely eliminates a determination of 'best interests' of a child from the jurisdictional inquiry  .. [to] advance a more efficient and 'bright line' jurisdictional rule consistent with the UCCJEA's purpose." *Welch–Doden v. Roberts,* 202 *Ariz.* 201, 42 *P.*3d 1166, 1173 (Ct.App.2002).

re *Meng,* 376 *N.J.Super.* 641, 644–45, 645 n. 1, 871 *A.*2d 182 (Ch.Div.2004). In an initial request for custody,

a .... a court of this State has jurisdiction to make an initial child custody determination only if:

(1) this State is the home state of the child on the date of the commencement of the proceeding, or was the home state of the child within six months before the commencement of the proceeding and the child is absent from this State but a parent or person acting as a parent continues to live in this State;

(2) a court of another state does not have jurisdiction under paragraph (1) of this subsection, or a court of the home state of the child has declined to exercise jurisdiction on the ground that this State is the more appropriate forum under ... [*N.J.S.A.* 2A:34–71 and –72] and:

(a) the child and the child's parents, or the child and at least one parent or a person acting as a parent ha[s] a significant connection with this State other than mere physical presence; and

(b) substantial evidence is available in this State concerning the child's care, protection, training and personal relationships;

(3) all courts having jurisdiction under paragraph (1) or (2) of this subsection have declined to exercise jurisdiction on the ground that a court of this State is the more appropriate forum to determine the custody of the child ...; or

(4) no state would have jurisdiction under paragraph (1), (2) or (3) of this subsection.

b. Subsection a. of this section is the exclusive jurisdictional basis for making a child custody determination by a court of this State.

c. Physical presence of, or personal jurisdiction over, a party or a child is neither necessary nor sufficient to make a child custody determination.

[*N.J.S.A.* 2A:34–65a, b, c.]

Under these provisions, the New Jersey court must determine whether New Jersey is the "home state" of the child, and if so, whether any prior custody determination has been made by another jurisdiction.

■ The child's "home state" is defined as "the state in which a child lived with a parent or a person acting as a parent for at least six consecutive months immediately before the commencement of a child custody proceeding ... [including a] period of temporary absence[.]" *N.J.S.A.* 2A:34–54. *See also N.J.S.A.* 2A:34–65a(1). In this regard, determination of the child's legal residence or domicile is unnecessary as the statutory language "lived," included within the definition of home state, connotes physical presence

within the state, rather than subjective intent to remain. *See Escobar v. Reisinger*, 133 *N.M.* 487, 64 *P.*3d 514, 517 (Ct.App. 2003) ("[T]he Legislature used the word 'lived,' rather than 'resided,' or 'was domiciled,' precisely to avoid complicating the determination of a child's home state with inquiries into the states of mind of the child or the child's adult caretakers."). "By adopting a definition of home state that focuses on the historical fact of the child's physical presence in a jurisdiction, the Legislature intended to provide a definite and certain test." *Ibid.* (internal quotation marks omitted).

The statutory definition of "home state" allows the child's "temporary absence" from the home state within the six month period. *N.J.S.A.* 2A:34–54. In considering whether an absence is temporary, courts have weighed: (1) the parent's purpose in removing the child from the state, rather than the length of the absence, *see Arnold v. Harari*, 4 *A.D.*3d 644, 772 *N.Y.S.*2d 727, 729–30 (2004) (examining father's admission in the record that one-year visit to Israel was intended to be temporary for purposes of child custody matters); (2) whether the parent remaining in the claimed home state believed the absence to be merely temporary, *see Sullivan v. Sullivan*, 105 *P.*3d 963, 966 (Utah Ct.App.2004) (rejecting father's assertion that wife absconded with children, thereby concluding absence was "temporary"); (3) whether the absence was of indefinite duration, *see Consford v. Consford*, 271 *A.D.*2d 106, 711 *N.Y.S.*2d 199, 205 (2000) (finding move precipitated on indefinite military assignment was not temporary); and (4) the totality of the circumstances surrounding the child's absence, *see Chick v. Chick*, 164 *N.C.App.* 444, 596 *S.E.*2d 303, 308 (2004). Courts examining this question have concluded temporary absences include court-ordered visitations, *In re Lewin*, 149 *S.W.*3d 727, 739 (Tex.App.2004), and vacations and business trips, *Alley v. Parker*, 707 *A.*2d 77, 78 (Me.1998).

Furthermore, the statute makes clear the child's time within a jurisdiction after a custody proceeding is initiated is irrelevant when determining the child's home state. *See Atkins v.*

*Vigil,* 59 *P.*3d 255, 257 (Ala.2002); *Irving v. Irving,* 682 *S.W.*2d 718, 721 (Tex.App.1985); *Hegler v. Hegler,* 383 *So.*2d 1134, 1137 (Fla.Dist.Ct.App.1980).

If New Jersey is the child's home state, the next inquiry is whether custody proceedings had been commenced in another state, properly exercising jurisdiction, which issued an initial custody determination.[3] *N.J.S.A.* 2A:34–70a. If so, and the other court had jurisdiction "substantially in conformity with [the UC-CJEA]," then New Jersey must stay its proceedings and communicate with the other court, seeking an agreement on whether New Jersey is the more convenient forum to make the determination. *N.J.S.A.* 2A:34–70b. A Family Part judge may decline to exercise jurisdiction if the person seeking to invoke the jurisdiction engaged in unjustifiable conduct, *N.J.S.A.* 2A:34–72, or if New Jersey is an inconvenient forum and another state would be more appropriate. *N.J.S.A.* 2A:34–71.

Finally, if there is no home state of the child, but another state, which "ha[s] jurisdiction substantially in accordance with [the UCCJEA,]" is conducting an ongoing custody proceeding, New Jersey should defer to the "first-filed" custody proceeding.[4] *N.J.S.A.* 2A:34–70b. If the New Jersey court defers to the state conducting a prior action, the Family Part judge must communicate with the other state, again, allowing the other state to determine if it is the most convenient forum. *N.J.S.A.* 2A:34–70a, b. If the other court continues with its exercise of jurisdiction, New Jersey must dismiss its pending proceeding. *N.J.S.A.* 2A:34–70b.

---

[3] " 'Initial Determination' means the first child custody determination concerning a particular child." *N.J.S.A.* 2A:34–54.

[4] Although not applicable here, we note a state which is not the child's home state may exercise subject matter jurisdiction if there is no other home state and the child and a parent have "a significant connection" with the state other than the physical presence of the child and "substantial evidence is available" in that state "concerning the child's care, protection, training and personal relationships[.]" *N.J.S.A.* 2A:34–65a(2).

Whenever a challenge to the court's ability to exercise subject matter jurisdiction in a custody matter is presented, a Family Part judge must scrutinize the facts and make specific findings supporting the court's assumption or rejection of subject matter jurisdiction. *R.* 1:7–4; *J.A. v. A.T.*, 404 *N.J.Super.* 132, 145, 960 *A.*2d 795 (App.Div.2008).

## III.

### A.

Applying these principles to the instant matter, we note neither party contests that Pakistan should be considered a state for the purposes of a jurisdictional analysis under the UCCJEA, as provided by *N.J.S.A.* 2A:34–57a. However, plaintiff does challenge that the Pakistani litigation qualifies as a prior custody proceeding, defined by *N.J.S.A.* 2A:34–54 and *N.J.S.A.* 2A:34–70. In any event, the threshold issue is whether New Jersey or Pakistan is the child's home state. *N.J.S.A.* 2A:34–65.

Defendant suggests a UCCJEA analysis is discretionary and the trial judge properly deferred to the prior Pakistani proceeding. We easily reject this proposition. An inter-jurisdictional custody dispute must be subject to the analysis outlined in the UCCJEA. *Poluhovich, supra,* 373 *N.J.Super.* at 357–59, 861 *A.*2d 205. Whether New Jersey and/or Pakistan has subject matter jurisdiction must be determined. More often than not, this determination requires a plenary hearing.

In this matter, after moving to New Jersey in July 2007, the child traveled to Pakistan on June 7, 2009. The record suggests the child and his mother returned to New Jersey on September 10, 2009, but went back to Pakistan on October 11, 2009, where the child stayed until July 22, 2010, when he was reunited with his mother in New Jersey. Although the child was not in New Jersey for a period of six months prior to plaintiff's filing her complaint for divorce on January 25, 2010, such a simplistic analysis does not end the jurisdictional inquiry.

A proper jurisdictional analysis must include review of whether Pakistan was the child's home state when defendant filed for custody on December 10, 2009. If the child relocated to Pakistan in June 2009 and only temporarily returned to New Jersey in September or October 2009, he would have been in Pakistan for six months. On the other hand, if the child's absence from New Jersey from June to September 2009 was temporary, then his stay in Pakistan preceding the initiation of defendant's custody action was merely three months, calling into question whether Pakistan is the child's home state as defined under the UCCJEA.

We have located limited New Jersey authority examining the question of what constitutes a temporary absence. In *Neger v. Neger*, 93 *N.J.* 15, 33, 459 *A.*2d 628 (1983), the Supreme Court reviewed the facts presented to determine whether the child's absence from New Jersey was temporary under a similar provision of the UCCJA. Following the terms of a custody schedule, the child was in her father's care in California for a two-month period when the mother filed for custody. *Ibid.* Focusing on the child's physical presence in the two states, the Court rejected the temporary characterization, explaining the child "had resided with her father in California for approximately 3 1/2 of the six months immediately preceding commencement of the New Jersey [custody] action and had not lived with her mother [in New Jersey] for six consecutive months within the prior six-month period." *Ibid.* The Court considered the child's California stay as "not truly characteristic of a visit, [because it] consisted of fixed substantial periods of time in a regular alternating manner unrelated to holidays or vacations." *Ibid.*

In *Maqsudi v. Maqsudi*, 363 *N.J.Super.* 53, 66–68, 830 *A.*2d 929 (Ch.Div.2002), the Family Part judge noted the dearth of New Jersey authority on what constitutes a child's temporary absence under the UCCJA. In deciding whether New Jersey was the child's home state, the judge concluded a temporary absence was

an absence for a limited period of time from the forum that is the residence for a permanent, or indefinite, period of time. In determining whether an absence was

temporary, courts must examine not only whether the child was physically present in the state but also how and when the child came to and remained in that state. [*Id.* at 67, 830 *A.*2d 929.]

The salient facts underpinning the trial judge's conclusion that New Jersey was the child's home state included: the parties' only permanent "home of infinite duration" was in New Jersey; the parties never established a permanent residence or engaged physicians for the child while abroad; trips were made to New Jersey "for renovation arrangements and vacation periods[;]" and the child attended a school abroad designed for "transient children who would one day make their way back to the United States to an American school curriculum." *Id.* at 67–68, 830 *A.*2d 929.

Here, the Family Part judge failed to analyze the child's home state and dismissed plaintiff's claims without prejudice, merely deferring to the previously filed on-going Pakistani proceeding. This was error.

Moreover, the error was compounded by the Family Part judge's failure to conduct a hearing or render any analysis of the facts presented in the parties' pleadings, which advance conflicting facts integral to a determination of the child's home state. *See, Dunne v. Dunne,* 209 *N.J.Super.* 559, 571, 508 *A.*2d 273 (App.Div. 1986) ("Since the issues ... hinge on factual determinations, credibility and diverse contentions, a plenary hearing is required.").

On appeal, plaintiff also challenges the Pakistani custody process, arguing it deviates from fundamental principles of human rights or does not base custody decisions on evaluation of the best interests of the children. The record is sparse on the procedural aspects of the Pakistani proceedings; however, bearing on this issue is the Lahore High Court's determination reversing the District Court. The Lahore High Court explained the question of whether the child "ordinarily resides" in Pakistan was "a question of fact which is to be decided after recording of evidence." *See Innes, supra,* 391 *N.J.Super.* at 484, 918 *A.*2d 686 (noting the Convention determines "a child's habitual residence" defined as

"the child's usual place of residence and primary home" (internal quotation marks omitted)); *Ali v. Ali,* 279 *N.J.Super.* 154, 167, 652 *A.2d* 253 (Ch.Div.1994) (rejecting the presumption "a father is automatically entitled to custody when a boy is seven" as inconsistent with the best interests standards); *Karam v. Karam,* 6 *So.*3d 87, 91 (Fla.Dist.Ct.App.2009) (concluding French jurisdictional standard "focused on the location of the children's 'usual and permanent centre of interest'" which was not in substantial conformity with the UCCJEA's home state standard); *Qiuyue Shao v. Yue Ma,* 68 *Mass.App.Ct.* 308, 861 *N.E.*2d 788, 793–94 (2007) (questioning whether Chinese substantive and procedural law is reasonably comparable to UCCJEA on record lacking such findings). However, plaintiff's assertion, if true, obviates application at the UCCJEA, as provided by *N.J.S.A.* 2A:34–57c. This must be examined by the Family Part on remand.

Also, two essential questions are raised by defendant, which must be analyzed. First, whether plaintiff's complaint for divorce satisfies the jurisdictional prerequisites set forth in *N.J.S.A.* 2A:34–65, as he maintains plaintiff was not a resident of New Jersey, but fraudulently used her brother's address at a time when she was living in Pakistan. Second, he argues plaintiff's illegal removal of the child from Pakistan, contrary to her alleged representations and orders issued by the Pakistani tribunals, require the Family Part to decline to exercise jurisdiction. *See N.J.S.A.* 2A:34–72a (requiring a court decline jurisdiction when obtained as a result of "unjustifiable conduct").

As we noted, these and the other cited issues are disputed and can only be fleshed out if the parties' proofs are tested during an evidentiary hearing. *See Mackowski v. Mackowski,* 317 *N.J.Super.* 8, 11, 721 *A.2d* 12 (App.Div.1998) (holding resolution at questions involving credibility cannot be resolved upon conflicting affidavits). Consequently, we must reverse the March 3, 2011 order, as amended on March 15, 2011, and remand for an evidentiary hearing.

On remand, the Family Part is required to follow the guidelines set forth in *N.J.S.A.* 2A:34–65 to determine the child's home state at the time plaintiff initiated matrimonial proceedings. If the trial court concludes New Jersey is not the home state, but Pakistan is, the New Jersey court should stay its proceedings pending communication with the Pakistan courts. *N.J.S.A.* 2A:34–70. If both New Jersey and Pakistan lack home state jurisdiction, the trial court must defer to the Pakistan proceedings if Pakistan's jurisdiction is "substantially in accordance with" the UCCJEA jurisdiction provisions. *N.J.S.A.* 2A:34–70b. If the answer is affirmative, New Jersey must stay its proceedings, communicate with Pakistan courts, and allow Pakistan to determine whether New Jersey or Pakistan is the most convenient forum to resolve the dispute. *N.J.S.A.* 2A:34–70a, b. If the answer is negative, New Jersey may exercise jurisdiction over plaintiff's custody complaint if she can show, prior to filing her complaint, the child had a "significant connection" to New Jersey and "substantial evidence" regarding the child's care, protection, training and personal relationships are available. *N.J.S.A.* 2A:34–65a(2).

## B.

Plaintiff next contests the dismissal of her complaint for divorce, equitable distribution, and alimony. She argues the Pakistani certification of divorce is not a judgment entitled to recognition. Defendant responds, arguing comity and res judicata support the trial judge's conclusion that jurisdiction over the collateral issues incident to the dissolution of the marriage rested with the Pakistani court.

In essence, plaintiff argues the trial court erred in granting comity to the certification of divorce entered by the Chairman Arbitration Council, following some disposition by the Lahore High Court on plaintiff's jurisdictional challenge. Whether a foreign country's judgment should be recognized under the doctrine of comity is not automatic and requires analysis.

■ "Comity, in a legal sense, is neither a matter of absolute obligation on the one hand nor of mere courtesy and good will upon the other." *Fantony v. Fantony*, 21 *N.J.* 525, 533, 122 *A.*2d 593 (1956). Comity is

a principle involved in the relationships of nations or states with each other. It is not an obligation or a rule of international law. It is a principle applied voluntarily by one state or nation in its conduct toward another state or nation; and it is applied by such state not only in the acts of its judiciary but also in the acts of its legislative and its administrative agencies. When exercised by a court it leads to the recognition and enforcement of the laws of a foreign state where, or to the extent that, such laws do not conflict with the local law, or work injustice on the local citizens or violate the public policy of the local state.

[*In re Fischer*, 119 *N.J. Eq.* 217, 223, 181 *A.* 875 (Prerog.Ct.1935).]

■ Considerations of comity preclude interference with the prosecution of a proceeding in a foreign jurisdiction. *O'Loughlin v. O'Loughlin*, 6 *N.J.* 170, 179, 78 *A.*2d 64 (1951). However, pivotal to any comity analysis is whether the foreign court had jurisdiction. *Fantony, supra*, 21 *N.J.* at 533, 122 *A.*2d 593.

■ "New Jersey has long adhered to 'the general rule that the court which first acquires jurisdiction has precedence in the absence of special equities.' " *Sensient Colors, Inc. v. Allstate Ins. Co.*, 193 *N.J.* 373, 386, 939 *A.*2d 767 (2008) (quoting *Yancoskie v. Del. River Port Auth.*, 78 *N.J.* 321, 324, 395 *A.*2d 192 (1978)). "Under the first-filed rule, a New Jersey state court ordinarily will stay or dismiss a civil action in deference to an already pending, substantially similar lawsuit in another state, unless compelling reasons dictate that it retain jurisdiction." *Ibid.* (citing *O'Loughlin, supra*, 6 *N.J.* at 179, 78 *A.*2d 64). Thus, a court reviewing a request to apply comity to a foreign judgment must determine whether "the foreign court had jurisdiction of the subject matter" and whether "the foreign judgment will not offend the public policy of our own State." *Fantony, supra*, 21 *N.J.* at 533, 122 *A.*2d 593.

In *Chaudry v. Chaudry*, 159 *N.J.Super.* 566, 575–76, 388 *A.*2d 1000 (App.Div.), *certif. denied*, 78 *N.J.* 335, 395 *A.*2d 204 (1978), we reversed the trial court's order granting maintenance to the wife

after rejecting the husband's request to recognize a Pakistani judgment of divorce, obtained two years earlier. We held:

> The divorce was actually confirmed by a court in Pakistan after being contested by the wife; and thereafter, after an appeal by the wife in a further contested proceeding, the Pakistan appellate court held the divorce to be valid. Under these circumstances, principles of comity require that the divorce be recognized here. Thus the status of the parties as being divorced should have been acknowledged by the trial judge.
>
> . . . .
>
> Pakistan had jurisdiction to enter a divorce that should be recognized here by reason of (1) the Pakistan citizenship of the parties, (2) the wife's residence there, even though it may have been against her will and by reason of the husband's acts, and (3) the judgment of the appellate court in Pakistan which validated the divorce. Irrespective of the manner in which the divorce action was instituted and the legal effect of the divorce document at the time it was filed . . . when it was acted upon in Pakistan, the final result was a divorce judgment entered after contested proceedings in Pakistan in which the parties appeared through counsel. We see no reason for holding that this foreign judgment adjudicating the status of the parties as divorced offends the public policy of this State. The reason for the divorce—the incompatibility of the parties by reason of the wife's emotional problems and the failure to effect a reconciliation—is not such a departure from grounds for divorce in this State as to justify nonrecognition on public policy grounds. *See N.J.S.A.* 2A:34-2(d).
>
> [*Ibid.*]

Like the parties in *Chaudry*, plaintiff and defendant are Pakistani citizens and were married in Pakistan. There is no reference in this record to an ante-nuptial agreement entered at the time of their marriage or a discussion of process or procedures undertaken by the Pakistani courts prior to issuance of the certification of divorce.

Each party relies on *Chaudry* to support his or her respective position. Plaintiff argues unlike the wife in *Chaudry*, the Pakistani procedure employed here precluded her participation or challenge to issuance of the certification of divorce. Defendant vehemently disputes this notion, stating plaintiff's brother participated in all proceedings in Pakistan as her designee. The trial court's analysis of the issue included these remarks:

> the presumption is that a court of record in a system that affords fundamental due process, [where] . . . both sides have the right to be heard, present evidence in some forum, represent an examinee by way of cross-examination or, otherwise, the evidence of the adverse party to expose it to its flaws and receive a determination

either from a judge or a jury ... that their judgments ought to receive comity and ought to be honored by American courts[.]

We determine the trial judge's failure to conduct an evidential hearing results in no record setting forth support for the presumptions apparently relied upon. The absence of the necessary record precludes our informed review.

Accordingly, we reverse and remand for a plenary hearing allowing the parties the opportunity to present evidence, particularly expert testimony, regarding the nature and extent of the Pakistani procedures resulting in the certification of divorce. The issues to be addressed before rejecting or applying comity principles include review of the Pakistani tribunal's jurisdictional determination and an examination of whether the judgment's determination of the issues does not offend New Jersey's public policy.

C.

In her final point, plaintiff seeks reversal of the dismissal of her application for child support, arguing the Uniform Interstate Family Support Act (UIFSA), *N.J.S.A.* 2A:4–30.65 to –30.123, provides the jurisdictional basis for a support award. Defendant suggests the issue was not presented to the trial court.

Although the issue was not determined during the motion hearing, it was expressed in plaintiff's pleadings. Depending on the Family Part's review of the other issues raised, this matter may warrant consideration on remand. We provide this additional guidance.

Before entering orders regarding child support and alimony, New Jersey courts must have subject matter jurisdiction. *Tracey v. Tracey,* 69 *N.J.Super.* 382, 388, 174 *A.*2d 361 (App.Div. 1961). Further, even where a divorce was entered in a foreign jurisdiction, New Jersey may consider a claim for child support or alimony. *Chaudry, supra,* 159 *N.J.Super.* at 577, 388 *A.*2d 1000. Finally, if New Jersey has personal and subject matter jurisdiction, a court may "award [child] support, if justified by the proofs, even after a valid foreign divorce." *Id.* at 578, 388 *A.*2d 1000. *See*

*also Youssefi v. Youssefi*, 328 *N.J.Super.* 12, 20, 744 *A.*2d 662 (App.Div.2000) (explaining a New Jersey court must have personal jurisdiction before it can enter an initial support order under UIFSA). However, UIFSA prohibits New Jersey from issuing a support order when proceedings are pending in another jurisdiction.[5] *N.J.S.A.* 2A:4–30.72d.

The record is not clear regarding the status of any child support proceedings in Pakistan. Defendant bears the initial burden of establishing:

"(1) there is a first-filed action in another state,

(2) both cases involve the same parties, the same claims, and the same legal issues, and

(3) the plaintiff will have the opportunity for adequate relief in the prior jurisdiction."

[*Innes, supra*, 391 *N.J.Super.* at 492, 918 *A.*2d 686 (App.Div.) (quoting *Bass v. DeVink*, 336 *N.J.Super.* 450, 456, 765 *A.*2d 247 (App.Div.), *certif. denied*, 168 *N.J.* 292, 773 *A.*2d 1156 (2001)).]

Thereafter, plaintiff may show that "special equities exist, and that they are sufficiently compelling to allow the action to proceed." *Ibid.* (internal quotation marks omitted).

Reversed and remanded. We do not retain jurisdiction.

---

[5] Under UIFSA, a "state" includes "a foreign jurisdiction that has enacted a law or established procedures for issuance and enforcement of support orders which are substantially similar to the procedures under this act[.]" *N.J.S.A.* 2A:4–30.65.