163 A.3d 375

B.G.,[1] PLAINTIFF, v. L.H., DEFENDANT.

Superior Court of New Jersey
Chancery Division
Family Part
Essex County

Decided: March 24, 2017

---

[1] We use initials to protect the children's identities.

440

441

*Sheryl J. Seiden* for plaintiff (*Seiden Family Law, LLC,* attorneys).

*John Clancey* for defendant (*Townsend, Tomaio & Newmark, LLC,* attorneys).

Civil Action

OPINION

PASSAMANO, J.S.C.

This matter comes before the court on plaintiff's motion asking this court to find that it lacks jurisdiction over custody and parenting time issues or, in the alternative, to relinquish jurisdiction in favor of the courts of the Commonwealth of Massachusetts. In addition, plaintiff seeks legal fees. Defendant opposes the motion and filed a cross-motion in which he too seeks an award of legal fees.

The court has considered the parties' written submissions and heard oral argument of counsel. Following are the court's findings of fact and conclusions of law.

I.

Plaintiff and defendant were married on January 10, 1993, and divorced on June 30, 2014, when the court issued a Dual Final Judgment of Divorce ("DFJOD"). The DFJOD incorporated the parties' Property Settlement and Support Agreement, dated June 24, 2014 (the "Agreement"). On October 12, 2013, the court had entered a final judgment re: custody and parenting time issues by consent of the parties (the "Custody and P–T Order"). The Custody and P–T Order was incorporated into the FDJOD.

There were three children born of the marriage; two sons and one daughter. The older son was born in 1996, the younger in 2000. The parties' daughter was born in 2006. The older son, who has mental health issues, is now an adult and lives in Israel. The

younger son and the daughter [2] reside with the plaintiff in Massachusetts.

The younger son has severe cerebral palsy and is confined to a wheelchair. He cannot speak and communicates through facial expressions, eye contact, guttural sounds and a Dyna Vox communication device. He does not have use of his hands and virtually all of his daily functions must be performed for him.

At the time that the FDJOD was entered, the parties and the children all resided in New Jersey. Plaintiff had, however, expressed her intent to relocate with the children. Plaintiff states in her certification that "[a]t the time of our divorce, defendant consented to my relocation with the [younger son and daughter] to Massachusetts." Defendant's consent was memorialized in the Custody and P–T Order, which states that:

Father agrees that Mother may move to the Boston/Newton, MA area no later than the beginning of the 2014–2015 school year. The parties agree that until the children are attending college or no longer residing at home that they shall at all times maintain a residence no further apart than the distance between Boston/Newton, MA area and the Northern New Jersey area (which is approximately 280 miles).

Plaintiff and the children did in fact relocate and have resided in Massachusetts since 2014. Plaintiff further states in her certification that she and defendant contemplated that he too would move to Massachusetts to be closer to the children. Defendant has not done so, however, and he continues to reside in New Jersey.

In the Custody and P–T Order, the parties consented to continued jurisdiction in New Jersey. They also agreed that disputes would be governed by New Jersey law. The particular provision of the Custody and P–T Order concerning jurisdiction reads as follows:

---

[2] Meaning no disrespect, the court will refer to the children at issue in this motion as the "younger son" and the "daughter." This is to maintain their privacy. Moreover, the use of initials would not be practicable as they are the same (first and last) for both children.

20. Jurisdiction: This Agreement shall be governed by the laws of the State of New Jersey for so long as one parent resides in New Jersey. Each of the parties hereby irrevocably consents and submits to the jurisdiction of the courts of the State of New Jersey for any future custody and parenting time disputes, so long as one parent resides in New Jersey.

As noted above, the FDJOD was entered in New Jersey. The Custody and P–T Order, which sets custody and parenting time, was also entered in New Jersey.

The custody arrangement set in the Custody and P–T Order provides that the parties have joint legal custody of the children. The Custody and P–T Order also provides that, after plaintiff and the children relocate to Massachusetts, defendant was to have parenting time as follows:

i. Every third weekend alternating between New Jersey and Massachusetts . . . .

. . . .

ii. If Mother moves prior to the summer of 2014, then Father shall have the summer 2014 and all future summers for the entirety of the summer period, with the exception of two weeks in the Summer Period which shall be deemed the Mother's parenting time . . . . Notwithstanding the foregoing, Father's summer parenting time during the summer period shall not exceed a total of seven weeks.

. . . .

iii. The entirety of the children's respective Winter and Spring breaks . . . .

The Custody and P–T Order also sets out the schedule for holidays and special days and provides for daily telephone contact. A further order on February 10, 2014, provided that "[t]he parties shall transfer the specialized van at pick-up and drop-off so that defendant is able to accommodate the [younger son's] unique needs during his parenting time."

In his certification, defendant states that "I still exercise ample parenting time in the State of New Jersey." Defendant also states in his certification that the incidents that led, at least in part, to the Massachusetts proceeding occurred in November 2016 when he picked up the children to attend a family wedding.

In bringing the children to New Jersey that weekend, defendant first went to Massachusetts to pick up the younger son. He then drove to Connecticut to pick up the daughter who was participating in a school retreat. Defendant believed that picking the

daughter up in Connecticut would save time as it was on the way between Massachusetts and New Jersey.

The daughter did not want to leave for New Jersey from Connecticut. Instead, she wanted to return to Massachusetts on the bus with her schoolmates and leave from there. Defendant, not wanting to drive from Connecticut back to Massachusetts and then to New Jersey for the wedding, refused. This led to a confrontation.

While defendant ultimately won out, it took "approximately an hour" and required that he deal with the daughter's "tantrum." Moreover, the rocky start seems to have colored the entire weekend. Defendant states that the daughter argued with him "about seating arrangements at the wedding" and "telephoned plaintiff several times from New Jersey." [3]

Defendant recounts in his certification that within a week of returning the children to Massachusetts, two separate Massachusetts "Department of Children and Family ("DCF") 51A complaints were initiated." One was filed by persons at the younger son's school and alleged sexual abuse by defendant. The other was filed by the daughter's pediatrician and alleged physical abuse by defendant.

The complaint involving the younger son concerned a cut and rash on his genitals. It was alleged that he suffered those injuries while in defendant's care. As for the daughter, the allegations involved incidents from when defendant picked her up in Connecticut and over the course of that weekend.

The Massachusetts Department of Children and Families determined that both of the complaints were unsubstantiated.

Plaintiff filed suit concerning custody in the Probate and Family Court for the Commonwealth of Massachusetts (Norfolk Division,

---

[3] Some details as to what happened are unclear and may be in dispute. The court does not see those details as being of a nature that would require an evidentiary hearing for purposes of this motion.

Docket No. 16D1644). The Massachusetts court entered an Order that restricted defendant to supervised parenting time. Further proceedings in Massachusetts are being held in abeyance pending this court's determination on jurisdiction.

On March 13, 2017, this court communicated with the Honorable Paul Cronin of the Massachusetts Probate and Family Court. The communication involved only "schedules, calendars, court records and similar matters." *See N.J.S.A.* 2A:34–62c. As allowed by that statutory provision, the communication was not on the record. The court did, however, inform the parties of its intent to initiate that communication. The court also advised the parties that the communication would be limited and if it were to be expanded, they would be informed and allowed to participate. *See N.J.S.A.* 2A:34–62b.

Judge Cronin advised the court that:

Hon. Elaine M. Moriarty, Associate Justice, the Judge that heard the proceeding and entered the Order restricting Defendant to supervised parenting time has retired. The case is now assigned to him (Judge Cronin.) The matter is scheduled for a conference on March 28, 2017, and they are waiting for a decision from this court on jurisdiction.

The calendar in the Massachusetts Court would allow for motions to be heard in approximately a month to a month and a half. A trial date, if needed, would be further out.

Plaintiff now seeks to have this court find that it lacks jurisdiction over custody and parenting time issues. In the alternative, plaintiff asks this court to relinquish jurisdiction in favor of the courts of Massachusetts, where, as noted above, she initiated a custody proceeding.

For the reasons set forth herein, the court finds that it has jurisdiction. The court also finds that it is appropriate for this court to retain, and not relinquish, that jurisdiction.

II.

The issue now before the court is governed by New Jersey's Uniform Child Custody Jurisdiction and Enforcement Act ("NJUCCJEA" or the "Act"). That act was adopted in 2004 and

codified at *N.J.S.A.* 2A:34–53 to –95. In this case, the initial orders concerning custody were entered in New Jersey. As such, under the Act, only a New Jersey court can make the determination that New Jersey has lost jurisdiction. *N.J.S.A.* 2A:34–66. The court notes that since the plaintiff and the children relocated in 2014, Massachusetts is now the children's home state for purposes of the Act. "'Home state' means the state in which a child lived with a parent or a person acting as a parent for at least six consecutive months immediately before the commencement of a child custody proceeding." *N.J.S.A.* 2A:34–54.

## A.

In considering jurisdiction, the court performs a three-stage analysis. In the first stage, the court must determine whether it had acquired "continuing exclusive jurisdiction." *Griffith v. Tressel*, 394 *N.J.Super.* 128, 139, 925 *A.*2d 702 (App. Div. 2007). In the second stage, the court determines "whether ... circumstances have changed so as to divest this state of ... jurisdiction." *Id.* at 140, 925 *A.*2d 702.

In the event that the court finds that it had acquired continuing exclusive jurisdiction, and that circumstances have not changed, the court then performs the third stage of the analysis. Under that stage, the court must determine, pursuant to *N.J.S.A.* 2A:34–71, whether New Jersey is an inconvenient forum and, if so, whether Massachusetts is the appropriate forum.

The court now applies the Act and controlling authority to the facts of this case.

## i.

The first stage of the analysis requires that the court consider the question of whether it has continuing exclusive jurisdiction. With respect to that issue, the Appellate Division in *Griffith v. Tressel*, held that:

> The relevant statute is *N.J.S.A.* 2A:34–66a, which provides: a.) Except as otherwise provided [for exercise of temporary emergency jurisdiction pursuant to

*N.J.S.A.* 2A:34–68], a court of this State that has made a child custody determination consistent with [*N.J.S.A.* 2A:34–65 (initial custody jurisdiction) or *N.J.S.A.* 2A:34–67 (jurisdiction to modify)] has exclusive, continuing jurisdiction over the determination. ... Pursuant to this provision, this state acquires "exclusive, continuing jurisdiction" when a court of this state makes an initial custody determination authorized by *N.J.S.A.* 2A:34–65 or modifies a custody determination made by another state when authorized to do so by *N.J.S.A.* 2A:34–67.

[*Id.* at 139–140, 925 *A.*2d 702.]

In this case, the first requirement has been met. The court acquired continuing exclusive jurisdiction when the initial custody order was entered. *Ibid.* That being so, the court must now consider "whether ... circumstances have changed so as to divest this state of ... jurisdiction." *Id.* at 140, 925 *A.*2d 702.

ii.

The circumstances that will divest the court of jurisdiction are defined in "Subsections a(1) and (2) of *N.J.S.A.* 2A:34–66 ...." *Ibid.* Those subsections provide that:

a. [A] court of this State that has made a child custody determination consistent with section 13 or 15 [C.2A:34–65 or 2A:34–67] of this act has exclusive, continuing jurisdiction over the determination until:

(1) a court of this State determines that neither the child, the child and one parent, nor the child and a person acting as a parent have a significant connection with this State and that substantial evidence is no longer available in this State concerning the child's care, protection, training, and personal relationships; or

(2) a court of this State or a court of another state determines that neither the child, nor a parent, nor any person acting as a parent presently resides in this State.

[*N.J.S.A.* 2A:34–66.]

Since it is uncontested that defendant continues to reside in New Jersey, the focus in this case is on part (1).

■ Under *N.J.S.A.* 2A:34–66a(1), jurisdiction remains unless "'neither the child, [nor] the child and one parent ... have a significant connection with this State and ... substantial evidence is no longer available. ...'" *Griffith v. Tressel, supra,* 394 *N.J.Super.* at 142–43, 925 *A.*2d 702. Jurisdiction will continue in this court absent a finding that both the requisite "significant connection" and "substantial evidence" elements are lacking. *Ibid.* As long as

the court finds either a significant connection, or substantial evidence, New Jersey retains jurisdiction. *Ibid.*

With respect to this issue, the Appellate Division held that:

jurisdiction is retained until both the requisite "significant connection" and the requisite "substantial evidence" are lacking. Stated in the affirmative, *N.J.S.A.* 2A:34–66a(1) provides that while this state has either the requisite "significant connection" or "substantial evidence," its exclusive jurisdiction continues. Although the comment to the UCCJEA casts some doubt on the propriety of this literal reading, it is at best ambiguous on that point. For the reasons set forth below, we conclude that a literal reading is intended. See *Pine Belt Chevrolet, Inc. v. Jersey Cent. Power and Light Co.*, 132 *N.J.* 564, 578–79 [626 *A.*2d 434] (1993) (discussing the problem of relying solely on the use of the word "and" or the word "or" because the words are frequently used as if interchangeable).

[*Ibid.*]

■ In approaching the question of whether a "significant connection" exists, the court performs a fact-specific inquiry. The focus of that inquiry is on the " 'relationship between the child and the [parent] remaining in the State with exclusive, continuing jurisdiction . . . .' " *Ibid.* (quoting UCCJEA, *supra*, § 202 comment 1, at 674). When "that relationship becomes too attenuated," the significant connection is lost. *Ibid.* A finding of significant connection cannot be based solely on a parent's continued residence in the state. *Id.* at 145–48, 925 *A.*2d 702.

In this case, the parties lived in New Jersey up to, and for a time after, they were divorced. Although plaintiff and the children relocated to Massachusetts in 2014, defendant continues to reside in this State. The parties share joint legal custody and defendant has parenting time in New Jersey.

The court now considers whether those facts warrant a finding of a significant connection.

In *Griffith v. Tressel*, the Appellate Division considered a case where the connections with New Jersey involved the following facts:

Plaintiff and the child have lived in Maryland since June 2001, one month before the child's third birthday. Plaintiff's mother and stepfather also live in Maryland. The child first attended school in that state, and she has been evaluated by a speech therapist and an educational psychologist in Maryland, both of whom made

recommendations for her development. She has been counseled by a psychologist in Maryland since March 2004.

Defendant continues to reside in New Jersey and exercises his parenting time in New Jersey. He does not identify any relationship that his child has with family members, friends or medical or education professionals in this state or any activities in which she is involved in New Jersey. The child's connections with this state are limited to her relationship with defendant and involvement with her parents' post-judgment litigation.

[*Id.* at 134, 925 *A.*2d 702.]

In considering those facts in the context of the Act, the Appellate Division held that:

This child's connection with defendant and New Jersey is not so attenuated as to be deemed not "significant." The child left New Jersey in June 2001, shortly before her third birthday. Between that time and August 9, 2005, the date on which defendant filed this motion to change custody, the child returned to New Jersey for parenting time on alternate weekends and holidays and two weeks during the summers, at least twenty percent of each year. Defendant also shares legal custody of the child with plaintiff, which gives him a role in the child's life beyond the hours of his parenting time. Consistent with the final judgment of divorce, which suggests, although not strongly, an agreement to litigate in New Jersey, both parties sought relief in our courts on numerous occasions following their divorce and prior to this litigation. They and their child attended family counseling in New Jersey pursuant to a court order, and the abuse that was alleged by plaintiff, allegedly occurred in this state.

These facts do not permit a finding that the "child" or "the child and one parent" (defendant, who is the parent remaining in this state) did not have a "significant connection with this State" when defendant filed this motion. The ordinary sense of the word "significant" is "meaningful." Webster's II New College Dictionary 1027 (1999).

[*Id.* at 146, 925 *A.*2d 702.]

In *Griffith*, the Appellate Division held that issues on the "quality" of the parent-child relationship do not necessarily prevent a finding of a significant connection. The Appellate Division noted that "[t]he papers submitted below raise a question about the quality of the relationship between defendant and his child, but they do not raise a reasonably debatable question about its significance or its connection with this state." *Ibid.*

■ In this case, the court finds a significant connection. Defendant has parenting time in New Jersey and has exercised his time. As he stated in his certification, defendant exercises ample parenting time in New Jersey. In her certification and reply-certification,

plaintiff does not dispute that defendant has parenting time in New Jersey. These are the types of contacts that the Appellate Division in *Griffith v. Tressel* looked to in determining a significant connection.

In this case, the court finds that the children and "one parent ... have a significant connection with this State ...." The connection between the children, defendant and New Jersey have not become attenuated. Parenting time continues to take place in New Jersey, as the parties had anticipated. The connection is significant and ongoing.

Since there is a significant connection, the court finds that it has continuing jurisdiction.

■ Moreover, the court also finds that there is "substantial evidence" in this state.

In his certification, defendant details the examinations and expert analysis that had been performed in New Jersey during the course of the matrimonial dispute. He indicates that custody issues were the main area of contention between the parties. In his letter-brief, defendant's counsel states that were this matter to proceed, there would be witnesses from New Jersey. While the court is not in a position to determine exactly what witness would be called, defendant's position that some would be from New Jersey is certainly credible. The court finds that there is substantial evidence in New Jersey.

While plaintiff states that evidence and witnesses are in Massachusetts, the court does not see that as dispositive. The Act requires that there be "substantial evidence" in this state. The Act does not require that New Jersey be the sole location of evidence.

For the reasons set forth above, the court finds that New Jersey has continuing exclusive jurisdiction. Having made the determination, the court must now consider if New Jersey is an inconvenient forum and, if so, whether Massachusetts is a more appropriate forum.

iii.

The Act provides that:

> A court of this State that has jurisdiction under this act to make a child custody determination may decline to exercise its jurisdiction at any time if it determines that it is an inconvenient forum under the circumstances and that a court of another state is a more appropriate forum. The issue of inconvenient forum may be raised upon the court's own motion, request of another court or motion of a party. [*N.J.S.A.* 2A:34–71(a).]

Both parts of that section must be met. In *S.B. v. G.M.B.*, 434 *N.J.Super.* 463, 472, 84 *A.*3d 1030 (App. Div. 2014), the Appellate Division held that before relinquishing jurisdiction, the court must find not only "that New Jersey constitutes 'an inconvenient forum' but also that [the foreign court] represents 'a more appropriate forum'"; the statute joins those two concepts with the word 'and,' and so both elements must be found before the home state may decline jurisdiction." For the reasons set forth below, the court finds that New Jersey is not an inconvenient forum and that Massachusetts is not a more appropriate forum.

a.

■ In considering whether New Jersey is an inconvenient forum and whether Massachusetts is a more appropriate forum, the court considers all the relevant factors including the eight factors set forth in *N.J.S.A.* 2A:34–71(b). "The focus of that inquiry is whether 'the court of another State is in a better position to make the custody determination, taking into consideration the relative circumstances of the parties.'" *Griffith v. Tressel, supra,* 394 *N.J.Super.* at 148, 925 *A.*2d 702 (quoting UCCJEA, § 207, comment at 683). The eight factors are:

> (1) whether domestic violence has occurred and is likely to continue in the future and which state could best protect the parties and the child;
>
> (2) the length of time the child has resided outside this State;
>
> (3) the distance between the court in this State and the court in the state that would assume jurisdiction;
>
> (4) the relative financial circumstances of the parties;
>
> (5) any agreement of the parties as to which state should assume jurisdiction;
>
> (6) the nature and location of the evidence required to resolve the pending litigation, including the testimony of the child;

(7) the ability of the court of each state to decide the issue expeditiously and the procedures necessary to present the evidence; and

(8) the familiarity of the court of each state with the facts and issues of the pending litigation.

[*N.J.S.A.* 2A:34–71(b).]

The court now considers each of the factors in light of the facts of this case.

1. Whether domestic violence has occurred and is likely to continue in the future and which state could best protect the parties and the child

In his certification, defendant states "[t]here was never domestic violence in our household, and plaintiff certainly did not 'flee' to Massachusetts." There have been investigations in both states by protective service agencies. Based on the motion record, there is no basis for the court to find that "domestic violence has occurred and is likely to continue into the future ... "

The motion record in this case shows that there have been allegations and protective service investigations both in New Jersey and in Massachusetts. It does not appear as though any investigations in either state resulted in a finding of abuse or domestic violence.

The court notes that the motion record reflects that the protective agencies in both states were responsive and acted in a way so as to protect the parties and the children.

The court finds that this factor is in equipoise; there is no reason to favor one state over the other.

2. The length of time the child has resided outside this State

In her certification, plaintiff states that "[a]t the time of our divorce, Defendant consented to my relocation with the younger son and daughter to Massachusetts." She states that she has resided in Massachusetts with the parties' younger son and daughter since 2014. She further states that while she and defendant had contemplated his moving to Massachusetts to be closer to the

children, he has not done so and continues to reside in New Jersey. Based on plaintiff's certification, the children have resided in Massachusetts since 2014—or for approximately three years.

There is nothing about the length of time that the children in this case have resided outside of New Jersey that would per se weigh in favor of finding New Jersey to be inconvenient or Massachusetts to be a more appropriate forum. In *Griffith*, the children had moved from New Jersey in 2001, and the motion to change custody had been filed in 2005—or approximately four years later.

To say that the length of time does not per se weigh in favor of Massachusetts does not, however, end the analysis. In this case, the court finds that the time that the children have been in Massachusetts is not so great as to render either New Jersey inconvenient or Massachusetts more appropriate. The younger son was born in 2000 and the daughter was born in 2006. They have resided in Massachusetts for approximately three years during which time they return to New Jersey for parenting time. There is nothing about the length of time that the children have resided in Massachusetts that would indicate a disposition to favor either state over the other.

The court finds that this factor is in equipoise.

3. The distance between the court in this State and the court in the state that would assume jurisdiction

Defendant in his certification states that it is approximately a five-hour drive to the relevant part of Massachusetts. That is not close, but it is within driving distance. As with factor 2, the court does not see anything about this factor that would indicate a disposition for either state.

The court finds that this factor is in equipoise.

4. The relative financial circumstances of the parties

In this case, plaintiff has not submitted evidence that would show that she would be prejudiced in the event that they were

required to litigate in New Jersey due to financial concerns. Moreover, as discussed below in the analysis on factor 5, plaintiff consented to jurisdiction continuing in New Jersey. There was no showing that her financial circumstances, or those of defendant, have changed since consent was given

The court finds that this factor is in equipoise.

5. Any agreement of the parties as to which state should assume jurisdiction

In this case, the parties consented to jurisdiction in New Jersey. They also agreed that disputes would be governed by New Jersey law. The relevant portion of the Custody and P–T Order is quoted in full in Part I of this opinion.

■■■ The fact that the parties consented to continuing jurisdiction in New Jersey is not dispositive. In *Griffith v. Tressel*, the Appellate Division held that "[a]n agreement between the parties cannot bind the courts of this state to accept subject matter jurisdiction when not permitted by law." *Griffith v. Tressel, supra,* 394 *N.J.Super.* at 137–138, 925 *A.*2d 702. The consent must, however, be given some consideration. *S.B. v. G.M.B., supra,* 434 *N.J.Super.* at 477, 84 *A.*3d 1030.

In *S.B. v. G.M.B.*, the Appellate Division held that:

The fifth factor requires consideration of "any agreement of the parties as to which state should assume jurisdiction." *N.J.S.A.* 2A:34–71(b)(5). There is no question the parties unambiguously agreed that New Jersey would remain the exclusive jurisdiction for the resolution of their disputes. Indeed, the PSA expresses that [the father] surrendered his statutory right to object to the removal of the children from the jurisdiction, *N.J.S.A.* 9:2–2, in exchange for [the mother's] agreement that New Jersey would remain the forum for all their parenting-time disputes until emancipation of the youngest child. The judge's statement that the parties' agreement is not binding suggests he gave it little weight. The judge was greatly mistaken in this regard. The parties stipulated to the continuation of New Jersey as the forum for any disputes. [The mother] received valuable consideration in obtaining [the father's] consent to her removal of the children from New Jersey; she gained certainty and the elimination of the possibility of [the father's] opposition to removal and the subsequent litigation—in New Jersey—that would have likely followed. The judge erred in giving this factor little or no weight.
[*Ibid.*]

Read together, *Griffith v. Tressel* and *S.B. v. G.M.B.* require that this court consider the consent to jurisdiction, although consent is not dispositive. In this case, as in *S.B.*, defendant consented to the removal of the children to New Jersey. By obtaining defendant's consent to the relocation, plaintiff avoided a contested removal proceeding. That proceeding would have taken place in New Jersey. As in *Griffith*, the consent to removal in this case was "valuable consideration" to plaintiff.

The court has considered the consent to jurisdiction and finds that, while that consent is not dispositive, this factor weighs against finding that New Jersey is an inconvenient forum, and against finding that Massachusetts is a more appropriate forum.

6. The nature and location of the evidence required to resolve the pending litigation, including the testimony of the child

Plaintiff, in her moving papers, indicates that the persons who made the initial referrals to the Massachusetts DCF would be witnesses, as would other persons who reside in Massachusetts. For his part, defendant states that were the matter to proceed to trial, certain persons who would be expected to testify reside in New Jersey.

At this point, the court cannot know what witnesses would be called at trial. Nor can the court know the exact "nature and location" of other evidence that may be offered. The court notes, however, that the Act provides means for evidence to be brought before the court notwithstanding that a witness may reside out of state. While live testimony is preferred, the Act does provide means for testimony to be taken from out-of-state witnesses. *N.J.S.A.* 2A:34–63.

In addressing this factor, the court has considered that there likely would be witnesses from both states.

The factor requires, however, that the court also consider the "testimony of the child." In this case, the younger son is confined to a wheelchair and requires assistance with all activities and

functions. The court finds that in considering this factor it is appropriate to consider not only the distance in terms of mileage, but also to consider the relative burden that travel has on each interested party. Here, the younger son requires special attention. The burden of traveling falls more heavily on him than on others.

While it may be true that the younger son travels to New Jersey for parenting time, the court does not see that as having any weight when considering this factor. While it is certainly possible for the children to travel to New Jersey, traveling for parenting time helps further the important public policy of maintaining the parent-child relationship notwithstanding that the parents have parted. *See N.J.S.A.* 9:2–4. Maintaining that relationship is also important to the younger son in maintaining a healthy parent-child relationship. *See Nufrio v. Nufrio,* 341 *N.J.Super.* 548, 775 *A.*2d 637 (App. Div. 2001).

With respect to the younger son, the court sees the issue of traveling to New Jersey for court proceedings, when another forum is available, as weighing in favor of finding New Jersey to be inconvenient. The court recognizes that there may be difficulties in any forum with respect to the younger son, but, for purposes of this factor the court finds that since the child lives in Massachusetts, that would be the more appropriate forum.

The court finds that this factor weighs in favor of finding that New Jersey is inconvenient and that Massachusetts is a more appropriate forum.

7. The ability of the court of each state to decide the issue expeditiously and the procedures necessary to present the evidence

The seventh factor requires consideration of "the ability of the court of each state to decide the issue expeditiously and the procedures necessary to present the evidence." *N.J.S.A.* 2A:34–71(b)(7). In this case, the courts in either state could hear the

matter in a timely fashion. The court does not see this as an issue that weighs in favor of either jurisdiction.

The court finds that this factor is in equipoise.

8. The familiarity of the court of each state with the facts and issues of the pending litigation

With respect to this factor, the Appellate Division in *S.B. v. G.M.B.*, stated that:

> The eighth and final factor requires consideration of "the familiarity of the court of each state with the facts and issues of the pending litigation." *N.J.S.A.* 2A:34-71(b)(8). The record reveals that no Canadian court is familiar with this case. On the other hand, the trial judge presided over and made findings of fact in the domestic violence matter, and he later presided over the uncontested divorce proceedings; accordingly, our courts are quite familiar with the parties and their past troubles, whereas the Canadian courts know nothing of these parties.

[*S.B. v. G.M.B.*, *supra*, 434 *N.J.Super.* at 479–80, 84 *A.*3d 1030.]

In this case, the New Jersey court has a longer history with the parties as the matrimonial proceeding was in this state. Furthermore, the Custody and P–T Order provides not only that the parties consented to jurisdiction in New Jersey, but that the Agreement "shall be governed by the laws of the State of New Jersey . . . ."

It must be noted, however, that the judge that heard the parties' matrimonial case has been reassigned. Prior to this motion, the judge now assigned had no involvement with this case or the parties. On the other hand, the Massachusetts court had no involvement with the family until plaintiff filed the action now pending. Moreover, the judge that heard the preliminary matters in Massachusetts, and entered the order allowing defendant to have only supervised parenting time, has retired. The judge that would hear the matter in Massachusetts has no prior involvement with the case.

The court finds that this factor is in equipoise.

The court has not considered any other factors.

B.

In considering the factors, the court performs a quantitative and qualitative analysis.

[A] quantitative consideration of the statutory factors strongly tilt in favor of New Jersey's retention of jurisdiction. Even so, we recognize that simple arithmetic is not what the legislation expects of our courts. A more sophisticated approach requires a consideration—based on the parties' particular circumstances—as to the weight to be given to those in favor of and against a declination of jurisdiction.

[*S.B. v. G.M.B.*, supra, 434 *N.J.Super.* at 480, 84 *A.*3d 1030.]

As detailed above, the court finds that six factors (factors 1, 2, 3, 4, 7, and 8) are in equipoise. The court finds that one factor (factor 6) weighs in favor of finding New Jersey is inconvenient and Massachusetts is a more convenient forum; and one factor (factor 5) weighs in favor of finding that New Jersey is not inconvenient and that Massachusetts is not a more appropriate forum.

On a qualitative analysis, the court finds that factor 5, which weighs against finding that New Jersey is inconvenient and that Massachusetts is a more appropriate forum, outweighs factor 6, which weighs in favor of making those findings. The court does not see the burden to the younger son of travel to New Jersey as outweighing the agreement that the parties made to litigate disputes in New Jersey.

The parties were aware of his condition at the time that they agreed to continuing jurisdiction in New Jersey. The parties themselves, the parents of the child, knowing his condition did not see it as a matter that would, in the event of any dispute, warrant that the dispute be litigated in the forum closest to where the child resided. Moreover, as noted above, many of the difficulties that the younger son would face are not related to the distance that he would travel to court. At least to some extent, the difficulties would be experienced in either court. Communication issues and concerns for the younger son's comfort and hygiene will be experienced in either court.

For these reasons, on a qualitative analysis, the court gives greater weight to factor 5, which favors New Jersey, than to factor 6, which favors Massachusetts.

In reaching this decision, the court did not give dispositive effect to the fact that the parties had consented to jurisdiction. The court considered all the facts and weighed the factors.

As for the quantitative analysis, in this case, one factor favors New Jersey, one factor favors Massachusetts and six factors are in equipoise. The quantitative analysis is neutral.

After weighing and considering all the factors, the court finds that New Jersey is not an inconvenient forum and that Massachusetts is not a more appropriate forum. For these reasons, plaintiff's request for this court to relinquish jurisdiction is denied.

### III.

Lastly, the court finds that a plenary hearing is not necessary. A plenary hearing should be held in cases where the court must make findings on disputed facts. In such circumstances, a hearing allows the court to observe the witnesses first-hand so as to be in a position to make credibility determinations. *See, e.g., Amatuzzo v. Kozmiuk*, 305 *N.J.Super.* 469, 475–76, 703 *A.*2d 9 (App. Div. 1997). A plenary hearing is not, however, necessary in every case. *Harrington v. Harrington*, 281 *N.J.Super.* 39, 46–47, 656 *A.*2d 456 (App. Div.), *certif. denied*, 142 *N.J.* 455, 663 *A.*2d 1361 (1995).

In *Harrington*, the Appellate Division held that:

We recognize that not every factual dispute that arises in the context of matrimonial proceedings triggers the need for a plenary hearing. *Adler v. Adler*, 229 *N.J.Super.* 496, 500 [552 *A.*2d 182] (App. Div.1988). But we have repeatedly emphasized that trial judges cannot resolve material factual disputes upon conflicting affidavits and certifications. E.g. *Fusco v. Fusco*, 186 *N.J.Super.* 321, 329 [452 *A.*2d 681] (App. Div.1982); *Tancredi v. Tancredi*, 101 *N.J.Super.* 259, 262 [244 *A.*2d 139] (App. Div.1968).

[*Id.* at 47, 656 *A.*2d 456.]

██ Under the authority cited above, a plenary hearing is not necessary unless there is a material issue of disputed facts. If the court finds that such a dispute exists, a plenary hearing should be held, regardless of whether a hearing was requested by any party.

In reaching its decision that a plenary hearing is not necessary, the court is aware of and has considered the Appellate Division's ruling in *Sajjad v. Cheema*, 428 *N.J.Super.* 160, 51 *A*.3d 146 (App. Div. 2012). In that case, the Appellate Division reversed a trial court's rulings on jurisdiction. In its opinion, the Appellate Division held that:

> the error was compounded by the Family Part judge's failure to conduct a hearing or render any analysis of the facts presented in the parties' pleadings, which advance conflicting facts integral to a determination of the child's home state. See, *Dunne v. Dunne*, 209 *N.J.Super.* 559, 571 [508 *A*.2d 273] (App. Div. 1986) ("Since the issues ... hinge on factual determinations, credibility and diverse contentions, a plenary hearing is required.").

[*Id.* at 177, 51 *A*.3d 146.]

In *Sajjad v. Cheema*, "the facts surrounding the parties' intentions and expectations are hotly disputed." *Id.* at 164, 51 *A*.3d 146. With respect to the facts at issue, the Appellate Division noted that:

> defendant submitted documentation suggesting he was a permanent domiciliary of the United Kingdom, and an "expatriate on a temporary assignment" to the United States. Defendant argued plaintiff and the child moved to Pakistan in the summer of 2009, intending to join him in the United Kingdom with no expectation of returning to the United States. He supported this with documents showing the child discontinued his Arabic/Islamic education in April 2009; stopped attending Islamic Tae Kwon Do in May 2009; and was withdrawn from his Ridgefield elementary school on June 3, 2009, because "the family w[ould] be relocating abroad." Defendant noted once in Pakistan, plaintiff and the child lived with her parents, she stored her jewelry in a local bank safe deposit box, and enrolled the child in school.
>
> Plaintiff refutes most of defendant's contentions, insisting her trip to Pakistan was an annual family visit and she and defendant had every expectation of returning to the United States at the conclusion of defendant's assignment in the United Kingdom. She disavows knowledge of the child's withdrawal from school, religious education, and "religion-based physical training" classes. To support her position, she offered a letter from Deutsche Bank written to secure the child's reentry to the United States in September 2009.

[*Id.* at 164–165, 51 *A*.3d 146.]

In *Sajjad,* the facts that were in dispute went to the issue of jurisdiction. In this case, the court finds that the material facts relevant to the issue of jurisdiction are not in dispute. There may be disputes as to exactly what happened over the weekend in November 2016 and as to other facts. Those disputes need not be resolved for purposes of determining jurisdiction.

In analyzing the eight factors, the court recognized disputes of fact may require testimony from witnesses in different states. For purposes of jurisdiction, the court recognized and considered the fact that disputes exist. Those disputes do not, however, have to be resolved for purposes of determining jurisdiction.

The court finds that there are no material facts in dispute with respect to the issue of jurisdiction. The court also finds that the motion record provides a sufficient basis on which to rule.

For these reasons, the court finds that a plenary hearing is not necessary.

## IV.

 In this case both parties are seeking attorneys' fees. Each parties' counsel submitted a certification detailing the services performed and the fees and costs incurred. In considering a request for legal fees, the court must consider the factors set forth in *Rule* 5:3–5(c). *Clarke v. Clarke ex rel. Costine,* 359 *N.J.Super.* 562, 572, 821 *A.*2d 104 (App. Div. 2003). Following are the factors and the court's findings and conclusions with respect to each.

### 1. The financial circumstances of the parties

 With respect to this factor, "[a] spouse's need for a fee award is determined by his or her income and available capital assets, and a disparity in income often suggests some entitlement to a fee allowance." *J.E.V. v. K.V.,* 426 *N.J.Super.* 475, 494, 45 *A.*3d 1001 (App. Div. 2012). The Appellate Division in *J.E.V. v. K.V.,* went on to state that:

Fees in family actions are normally awarded to permit parties with unequal financial positions to litigate (in good faith) on an equal footing. *Anzalone v. Anzalone Bros., Inc. and Anzalone*, 185 *N.J.Super.* 481, 486–87 [449 *A.*2d 1310] (App. Div. 1982). With the addition of bad faith as a consideration, it is also apparent that fees may be used to prevent a maliciously motivated party from inflicting economic damage on an opposing party by forcing expenditures for counsel fees. This purpose has a dual character since it sanctions a maliciously motivated position and indemnifies the "innocent" party from economic harm. *Fagas v. Scott*, 251 *N.J.Super.* 169, 194, 197–200 [597 *A.*2d 571] (Law Div.1991).] [*Id.* at 493, 45 *A.*3d 1001.]

In her certification of services, plaintiff's counsel indicates that "[a]t the time of the parties' divorce, defendant earned substantially more money than plaintiff and plaintiff believes that he continues to do so. Current financial information has not been exchanged." Defendant did not submit any financial information.

As plaintiff's counsel acknowledges, financial information was not exchanged. Consequently, any disparity in income cannot be quantified. Nonetheless, there was no evidence submitted indicating that the disparity that existed at the time of the divorce has been eliminated.

Based on the record that is before it, the court finds that this factor weighs in favor of a fee award for plaintiff. Although, without having the benefit of detailed financial information, the court gives limited weight to this factor.

2. The ability of the parties to pay their own fees or to contribute to the fees of the other party

Other than as set forth in its review of factor 1, this issue was not addressed by the parties in their fee requests.

The court has considered this factor and finds that it weighs in favor of a fee award for plaintiff. Here again, as noted above without detailed information, the court gives this factor little weight.

3. The reasonableness and good faith of the positions advanced by the parties both during and prior to trial

While plaintiff was not successful, the court finds that the legal positions advanced by her counsel were reasonable and that the

issue of jurisdiction was advanced before this court in good faith. The court notes with respect to this factor that defendant ascribed improper motives to plaintiff's actions. The court in making its ruling on fees is only considering the proceedings that have taken place in this court—that is solely on plaintiff's motion with respect to jurisdiction.

The court makes no findings on the reasonableness or good faith of the positions advanced before the court in Massachusetts.

The court finds that defendant, who was successful, took reasonable positions and advanced his arguments before this court in good faith.

The court weighs this factor in favor of denying both of the fee requests.

### 4. The extent of the fees incurred by both parties

Counsel for both parties submitted certifications that outlined the fees and costs associated with the motion and cross-motion. Plaintiff's counsel spent 26.4 hours and seeks $11,647.50 in fees and costs. Defendant's counsel spent 13 hours and seeks $4355 in fees.

The issues involved in this case required analysis of statutes and case law. The factual material involved certifications as well as reports from protective agencies, court orders, and the Agreement. The written work product and oral argument showed that counsel on both sides had spent appropriate time to fully and clearly present the issues. The time spent and the amount of the fees on both sides are reasonable.

The court has considered this factor and finds that it does not weigh in favor either of granting or denying the fee requests.

### 5. Any fees previously awarded

In her certification, plaintiff's counsel stated that there have been no fees awarded post-judgment.

The court has considered this factor and finds that it does not weigh in favor either of granting, or denying the fee requests.

### 6. The amount of fees previously paid to counsel by each party

In her certification, plaintiff's counsel detailed the fees that plaintiff had incurred in Massachusetts ($16,162.50). She also referred to the fees detailed with respect to factor 4. In considering this factor, the court looks at the total of the fees incurred and the amounts already paid. The court has considered those amounts and finds that they are not of a magnitude, nor do they have a level of disparate impact on one party, that would warrant a grant of fees.

The court has considered this factor and finds that it does not weigh in favor either of granting or denying the fee requests.

### 7. The results obtained

Plaintiff did not prevail on the motion. Defendant was successful in opposing the motion.

For that reason, the court finds that this factor weighs in favor of granting defendant's fee application.

### 8. The degree to which fees were incurred to enforce existing orders or to compel discovery

The matters at issue did not involve any application either to enforce any existing order or to compel discovery. With respect to this factor, since under controlling authority from the Appellate Division, the parties' agreement to jurisdiction in the Agreement is not dispositive, the court does not consider the motion to involve enforcement of an order.

This factor does not weigh in favor either of granting, or denying the fee requests.

9. Any other factor bearing on the fairness of an award

In her certification, plaintiff's counsel indicates that an award of "[f]ees [is] necessary to encourage defendant's cooperation in the future and to level the playing field." With respect to plaintiff's position, the court has already considered the issue of leveling the playing field in its analysis of 1. As to defendant's cooperation, there has been no showing that defendant has been uncooperative or that an award of fees is needed to ensure cooperation.

The court has considered these arguments and finds that they do not provide a basis for the court to grant fees to plaintiff and that this factor does not weigh in favor either of granting or denying the fee requests.

The court has not considered any factors other than as detailed above.

■■■ In considering the fee requests, the court must consider and weigh all of the factors. *Accardi v. Accardi,* 369 *N.J.Super.* 75, 90–91, 848 *A.*2d 44 (App. Div. 2004). After considering all the factors, the court found one factor (factor 7) weighing in favor of an award for defendant, and two factors (factors 1 and 2) that weigh in favor of plaintiff. The court finds that those factors are roughly in balance. While two factors favored plaintiff, as detailed above, the court gave little weight to them. The court finds that they balance with the one factor favoring defendant.

The court found that one factor (factor 3) was in favor of no fee award for either party. The remaining factors were neutral and did not weigh in favor of an award for either party.

After considering and weighing all of the factors, the court finds that both parties' requests for fees should be denied.

Since the court has denied the fee requests, there is no need to calculate the lodestar amounts. *Yueh v. Yueh,* 329 *N.J.Super.* 447, 464, 748 *A.*2d 150 (App. Div. 2000).

This ruling applies only to the motion before this court with respect to jurisdiction.

## V.

An order will issue in accordance with this opinion.