# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5287-18T3

A.D.A.,

    Plaintiff-Respondent,

v.

R.J.,

    Defendant-Appellant.

_____

> Argued March 2, 2020 – Decided April 13, 2020
>
> Before Judges Rothstadt and Mitterhoff.
>
> On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Bergen County, Docket No. FD-02-0765-19.
>
> F. Thomas Sidoti argued the cause for appellant.
>
> Richard F. Iglar argued the cause for respondent (Skoloff & Wolfe, PC, attorneys; Richard F. Iglar and Patrick T. Collins, on the brief).

PER CURIAM

In this international custody dispute, defendant R.J. appeals from the Family Part's April 18, 2019 order, declining jurisdiction and enforcing a Qatari order that compelled defendant to send her children back to their father, plaintiff A.D.A., in Qatar.[1] Defendant also appeals from the July 18, 2019 order, denying her motion for reconsideration of the April 18, 2019 order. The parties' dispute arose after defendant, a United States citizen, fled Qatar with her children due to allegations of domestic violence. Once defendant arrived in New Jersey, she filed a complaint under the Prevention of Domestic Violence Act (PDVA), N.J.S.A. 2C:25-17 to -35, against plaintiff and obtained a temporary restraining order (TRO). Plaintiff then initiated legal proceedings against defendant in Qatar.[2] After a Qatari court required defendant to return the parties' children to Qatar, plaintiff filed this action seeking to enforce the Qatari order.

---

[1] We use initials to protect the parties' privacy interests. See R. 1:38-3(d).

[2] Qatar is not a signatory to

> [t]he Hague Convention, a multilateral treaty with seventy-nine contracting nations, [that] seeks "to secure the prompt return of children wrongfully removed to or retained in any Contracting State" and "to ensure that rights of custody and of access under the law of one Contracting State are effectively respected in the other Contracting States."

On appeal, defendant argues that the Qatari order should not have been enforced because she was not properly notified of the Qatari proceedings, her due process rights were violated, Qatari's own procedural requirements were not followed, the order was not properly authenticated under the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA), N.J.S.A. 2A:34-53 to -95, Qatar does not consider the best interests standard in making custody determinations, and the Family Part should have maintained emergent jurisdiction and held a plenary hearing. We reverse the denial of reconsideration, vacate the order compelling the return of the children, and remand the matter for a plenary hearing as we conclude the parties' dispute should not have been resolved based only upon conflicting written submissions.

The facts developed in the submissions made by the parties reveal that plaintiff was born in Syria, lives in Qatar, and has a United States "Green Card." Defendant was born in the United States, spent some time as a child in Jordan,

---

> [MacKinnon v. MacKinnon, 191 N.J. 240, 246-47
> (2007) (quoting Hague Convention on the Civil Aspects
> of International Child Abduction, art. 1, Oct. 25, 1980,
> T.I.A.S. No. 11,670, 1343 U.N.T.S. 49);]

see also F.H.U. v. A.C.U., 427 N.J. Super. 354, 371-74 (App. Div. 2012) (discussing the relationship between the Hague Convention and the International Child Abduction Remedies Act, 22 U.S.C. §§ 9001 to 9011).

but relocated with her family to the United States until she married plaintiff in 2011, and immediately thereafter moved to Qatar. The parties have two children who were born in Qatar, a son born in 2012 and a daughter born in 2014.

Prior to the birth of the first child, defendant alleged that plaintiff started to physically abuse her, which led to her leaving Qatar with plaintiff's permission to visit her family in New Jersey. Defendant lived with her parents for a few months before plaintiff flew to New Jersey and reconciled with defendant. The two moved back to Qatar, where defendant then gave birth to their son. A few months afterwards, the parties came back to the United States to visit defendant's family. They then returned to Qatar and in March 2014 defendant gave birth to the parties' daughter.

In 2016, the parties and the children visited California and afterwards, defendant traveled to New Jersey with the parties' children. While in New Jersey and California, defendant had her son examined by doctors who diagnosed him with autism and advised the parties that early intervention is crucial. According to defendant, plaintiff had no intention of having their son treated. "Concerned about the wellbeing of [her] children . . . and [her] own wellbeing, [defendant] refused to go back to Qatar with [p]laintiff" and instead, stayed in California for a bit and then flew back to New Jersey to stay with her parents. Plaintiff then

allegedly threatened that he would punish defendant and take away her children if she did not return to Qatar.

Defendant filed her first complaint for domestic violence in September 2016. It was not until eight months later that plaintiff reached out to defendant in an attempt to reconcile with her. Defendant agreed and moved back to Qatar. According to defendant, when she arrived back in Qatar, the abuse escalated.

Allegedly, on September 25, 2018, the parties had an argument that escalated when plaintiff locked defendant in the dining room, picked up a chair, threatened to hit defendant, chased defendant around the dining room, and kicked and punched defendant. Defendant begged plaintiff to stop and at the very least take their daughter out of the room. Plaintiff pushed their daughter out of the room, continued to hit defendant, relocked her in the room, and took defendant's phone and keys with him. The parties' daughter witnessed the entire event, and plaintiff's parents were in the next room. The abuse resulted in there being blood all over the bedroom floor.

Afterwards, defendant unsuccessfully attempted to escape through a window. Later that day, plaintiff took defendant to the hospital, and he informed the hospital employees that defendant fell, which caused her to bruise, swell, and sustain lesions.

When defendant was able to leave her house, she secured assistance from the United States Embassy in obtaining emergency passports for her and her children. Defendant and her children arrived in the United States on November 5, 2018. Plaintiff made several attempts to contact defendant by phone and email, but defendant ignored his communications.

On November 7, 2018, defendant filed her second domestic violence complaint alleging that plaintiff committed the predicate acts of assault, criminal restraint, false imprisonment, and harassment during the September 2018 incident in Qatar. Defendant also alleged past events of domestic violence from 2012, 2014, and 2015 that included descriptions of specific violent and abusive behavior by plaintiff against defendant and on one occasion, against their daughter. The Family Part issued a TRO restraining plaintiff from having any contact with defendant and the children.

Soon afterwards, plaintiff initiated legal proceedings against defendant in Qatar. On December 2, 2018, a Qatari court entered an order requiring the return of the parties' children to Qatar pending further proceedings. Plaintiff sent a letter attaching the order to defendant's attorney but did not include a copy of the underlying complaint or petition containing the allegations he made against defendant. A court hearing was scheduled in Qatar for December 19, 2018.

6

Defendant did not appear and did not return their children to Qatar. Because defendant missed the hearing in Qatar, it was rescheduled to January 9, 2019. It was once again rescheduled to January 31, 2019. Since defendant never followed the Qatari order, on April 10, 2019, the Qatari court "decided to compel . . . . [plaintiff to r]eturn the children under her custody . . . to their father in Qatar pending the verdict on the lawsuit."

On January 22, 2019, plaintiff filed the complaint in this action seeking the enforcement of the Qatari order and requiring the return of the parties' children to Qatar. Plaintiff attached a copy of the Qatari order to his complaint but again did not provide a copy of the underlying pleading, if any. In his complaint, plaintiff argued that under the UCCJEA, Qatar is the children's home, and New Jersey lacked jurisdiction to make a custody determination. He also sought temporary parenting time in New Jersey.

Plaintiff also argued that the Qatari court order did

> not conflict with the law of New Jersey, [did] not work an injustice upon any citizen of New Jersey and [did] not violate the public policy of New Jersey; indeed, it is the very same order that a court of this State would issue if presented with facts such as [the ones] present[ed] here.

He further alleged that defendant's actions "represent the crimes of [i]nterference with [c]ustody as defined by N.J.S.A. 2C:13-4(a)(1) . . . and

[k]idnapping as defined by N.J.S.A. 2C:13-1(b)(4)." Plaintiff sought to "enjoin[] and restrain[]" defendant from further engaging in criminal activity, which had the effect of "depriving [p]laintiff of the custody . . . and contact with the parties' children." Last, defendant made a claim in equity.

Plaintiff also filed a motion to dismiss defendant's domestic violence complaint for lack of jurisdiction, supported by his certification that disputed defendant's allegations. According to plaintiff, he was a citizen and native of Qatar. Plaintiff stated that he had no connection to New Jersey, and he would never have visited New Jersey if he was not married to defendant. He further argued that having a trial in New Jersey would be too difficult as most of the witnesses he would need to subpoena in order to rebut defendant's claims lived in Qatar.

Plaintiff denied the allegations of domestic violence and claimed that defendant only alleged acts of domestic violence to "justify her abduction of [their] children" to the United States consistent with her repeated desire to relocate the family to New Jersey "to live in close proximity to [defendant's] parents." Plaintiff stated that defendant was able to leave their house in Qatar whenever she pleased. He further stated that defendant fled the country and kidnapped their children in November 2018 as she was upset plaintiff would

reduce his financial support for defendant's family. As to the September 25, 2018 allegation of domestic violence, plaintiff admitted that defendant was injured, but claimed the injury was unrelated to domestic violence. Instead, plaintiff insisted that defendant simply fell, causing her to swell, but denied there was any broken skin or blood.

Defendant and counsel for both parties appeared before a Family Part judge on March 20, 2019, at which time the judge rescheduled the matter to April 18, 2019, directed defendant to file a brief by April 9, 2019, and plaintiff to file a reply by April 15, 2019. The judge also noted that appearances of the parties could be waived. Both parties filed their respective briefs on time.

The trial judge rendered his decision on the record on April 18, 2019, without hearing oral argument. The judge noted that he was not taking any testimony, and his decision relied upon the parties' certifications and the briefs. He stated that he could not "make the finding that the . . . Qatari court would not do what was in the best interest[s] of the children." Relying on the UCCJEA, the judge held that it was "clear that Qatar was the residence of the children for most of their lives and at least six months prior to the removal of them to [the] United States in November . . . 2018." He found "the children were . . . habitual

residents of Qatar," defendant never sought leave from a Qatari court to bring the children to New Jersey and did not get consent from plaintiff.

The judge concluded that New Jersey did not have jurisdiction to consider the issue, and the Qatari orders requiring the return of the children for further proceedings must be followed. As a result, the judge removed the children as protected parties from the TRO. The TRO was extended for defendant. The judge entered an order memorializing his decision the same day.

Defendant filed a motion for reconsideration of the judge's April 18, 2019 order on May 8, 2019. In her motion, defendant argued that Qatari law fails to consider the best interests of a child, "violates New Jersey public policy as well [as] fundamental principles of human rights," she was not properly served or notified of the Qatari action, and her due process rights were violated. In support of her motion, defendant filed a certification of Abed Awad, a New Jersey attorney offered as an expert in Islamic/Qatari law. Awad provided his detailed opinion of Qatari law and how custody disputes in Qatar do not advance the best interests of the children, but instead considers religious and cultural factors that primarily favor the father. He also addressed how defendant was not properly served with process under that country's laws, after only being able to review

the Qatari orders. Awad also explained that a Qatari court would not grant comity to a New Jersey judgment as it would be against its public policy.

In his opposition to defendant's motion, plaintiff requested that the judge memorialize his April 18, 2019 decision that New Jersey did not have jurisdiction to hear the matter. He also asked for the return of the children and that the transfer not violate the TRO that was still in effect.

Plaintiff also filed a certification of his own expert, Alaa Ibrahim, who stated that he practiced Qatari law and explained in detail why he disagreed with Awad's findings and conclusions. Specifically, Ibrahim disagreed with Awad's conclusions regarding women's rights under Qatari law and that Qatar does not consider the best interests of a child in custody disputes. In support of his opinions, Ibrahim cited to specific sections of Qatari law that expressed its concern for a child's best interest and those that addressed protections available to women against domestic violence. In relation to service of process, Ibrahim explained why he concluded that service of the orders constituted valid service of process.

Defendant filed a reply certification from Awad that explained why he believed Ibrahim's opinions did not properly explain Qatari law, noting that Ibrahim completely ignored certain articles that guaranteed custodial rights to

11

men only and denied various rights to a mother who loses custody. Awad explained that "the custody law[s] of Qatar [were] not in substantial conformity with the American jurisprudence of best interests of the child." As to service of process, Awad argued that Ibrahim did not cite to any specific Qatari laws on civil procedure and incorrectly concluded that attaching the order to plaintiff's complaint in this action was sufficient for service. In relation to domestic violence, Awad contended that the key components of domestic violence laws, "standard of proof and the recognition of the cycle of domestic violence," are not considered by Qatar.

On July 18, 2019, the judge considered the parties' oral arguments and denied the motion, affirming his earlier decision for reasons he placed on the record that day. In his decision, the judge cited to an unpublished California appellate opinion that he found persuasive albeit not precedential and concluded again that Qatar had jurisdiction to determine the custody issues. In reaching his decision, the judge did not find that one expert was more persuasive than the other, and, in any event, concluded that those issues were not appropriate on the motion for reconsideration and should have been brought previously. As to the Qatari orders, the judge found that defendant had an opportunity to address the orders in Qatar and that she was aware of the proceedings.

A-5287-18T3

Defense counsel questioned the judge about whether he was "finding that notice requirements under . . . UCCJEA and due process requirements [were] satisfied when a litigant [was] just given the equivalent of [New Jersey's] court notice time and date for a hearing, but not served with any of the pleadings." In response, the judge stated that he was "not going to make that bite at that broad apple right there. What [he was] finding [was] that . . . plaintiff was aware of these [proceedings] and could have chosen to participate in them." The judge agreed to issue a stay of his order pending appeal and the parties thereafter agreed that pending the appeal, "plaintiff may have electronic communication or telephonic communication with the children and not be deemed in violation of the restraining order." The judge entered an order memorializing his decision that day and issued a stay pending appeal. This appeal followed.

At the outset, we acknowledge that our review of a Family Part judge's determination in custody and parenting time matters is limited. "Family Part judges are frequently called upon to make difficult and sensitive decisions regarding the safety and well-being of children." Hand v. Hand, 391 N.J. Super. 102, 111 (App. Div. 2007). "[B]ecause of the family courts' special jurisdiction and expertise in family matters, [we] . . . accord deference to family court factfinding." N.J. Div. of Youth & Family Servs. v. M.C. III, 201 N.J. 328, 343

(2010) (quoting Cesare v. Cesare, 154 N.J. 394, 413 (1998)). Our narrow review is based upon that fact "we have 'invest[ed] the family court with broad discretion because of its specialized knowledge and experience in matters involving parental relationships and the best interests of children.'" N.J. Div. of Child Prot. & Permanency v. A.B., 231 N.J. 354, 365 (2017) (alteration in original) (quoting N.J. Div. of Youth & Family Servs. v. F.M., 211 N.J. 420, 427 (2012)). "[W]e defer to [F]amily [P]art judges 'unless they are so wide of the mark that our intervention is required to avert an injustice.'" Ibid. (quoting F.M., 211 N.J. at 427). However, "[w]e owe no special deference to the trial judge's legal determinations." Slawinski v. Nicholas, 448 N.J. Super. 25, 32 (App. Div. 2016). "Notwithstanding our general deference to Family Part decisions, we are compelled to reverse when the court does not apply the governing legal standards." Ibid. (citation omitted).

We conclude from our review that the Family Part judge did not follow the correct legal standard when determining the issues in this dispute over jurisdiction. In this international custody dispute, the nature of the conflicting proofs required that the judge conduct a plenary hearing and issue a detailed statement of reasons explaining his decision.

In Sajjad v. Cheema, 428 N.J. Super. 160 (App. Div. 2012), we described a Family Part judge's obligation under the UCCJEA when confronted with an international custody dispute.  In discussing the Act, we stated the following:

> The UCCJEA governs the determination of subject matter jurisdiction in interstate, as well as international, custody disputes.  The UCCJEA was enacted in an effort "to avoid jurisdictional competition and conflict" between jurisdictions in favor of "cooperation with courts of other states [or other countries] as necessary to ensure that custody determinations are made in the state that can best decide the case."  When confronted with a child custody complaint involving competing interstate or international jurisdictional claims, the Family Part must examine and follow the multi-step procedure outlined in the UCCJEA.
>
> When undertaking a jurisdictional analysis, the UCCJEA treats a foreign sovereign "as if it were a state of the United States . . . if the foreign court gives notice and an opportunity to be heard to all parties before making child custody determinations."  N.J.S.A. 2A:34-57(a).  One exception obviating compliance with the UCCJEA occurs "if the child custody law of a foreign country violates fundamental principles of human rights or does not base custody decisions on evaluation of the best interests of the child."  N.J.S.A. 2A:34-57(c).
>
> [Id. at 170-71 (alterations in original) (citations omitted);]

see also Ali v. Ali, 279 N.J. Super. 154, 164-67 (App. Div. 1994) (determining that the enforcement of a foreign order was not possible since the plaintiff failed

to file a certified copy of the foreign country's order for divorce; only attached a copy of the notice for divorce to his complaint; the plaintiff was never personally served the ex parte order; it was unknown whether the best interests of the child was considered; and defendant did not have actual knowledge "to satisfy due process considerations, [which] cannot supplant the requirement of personal service").

As we also stated, "[w]henever a challenge to the court's ability to exercise subject matter jurisdiction in a custody matter is presented, a Family Part judge must scrutinize the facts and make specific findings supporting the court's assumption or rejection of subject matter jurisdiction." Sajjad, 428 N.J. Super. at 175. The "custody dispute must be subject to the analysis outlined in the UCCJEA," which "[m]ore often than not, . . . requires a plenary hearing." Ibid. Disputed issues "can only be fleshed out if the parties' proofs are tested during an evidentiary hearing." Id. at 178. After a hearing, if the judge determines that "the child custody law of a foreign country violates fundamental principles of human rights or does not base custody decisions on evaluation of the best interests of the child," the judge should not follow the UCCJEA. Id. at 171 (quoting N.J.S.A. 2A:34-57(c)); see Ivaldi v. Ivaldi, 147 N.J. 190, 205-06 (1996) ("If the [foreign] court denies the [parent] procedural due process or refuses to

consider [the child's] best interests, the Family Part may then refuse to enforce the [foreign] decree."); see also UCCJEA § 105, Commissioner's Official Comment, 9 U.L.A. 662 (2018).

We recognize that, as the judge concluded here, normally a motion for reconsideration "does not provide the litigant with an opportunity to raise new legal issues that were not presented to the court in the underlying motion." Medina v. Pitta, 442 N.J. Super. 1, 18 (App. Div. 2015). However, in light of the summary procedure pursued at the original hearing on plaintiff's complaint and considering the fact that the subject matter here involves not only the question of jurisdiction but also the best interests of the children and allegations of physical abuse, simply rejecting the conflicting information on reconsideration was a mistaken exercise of discretion. The decision to not conduct a plenary hearing and to not make the required findings "inexplicably departed from established policies, or rested on an impermissible basis," which warranted reconsideration. Milne v. Goldenberg, 428 N.J. Super. 184, 197 (App. Div. 2012) (quoting Flagg v. Essex Cty. Prosecutor, 171 N.J. 561, 571 (2002)).

At the plenary hearing on remand, the parties must present evidence addressing each of the following issues, using the services of an approved court

interpreter and allowing appearances by phone, if necessary: (1) whether the service of the Qatari orders without the underlying complaint or petition satisfied the applicable due process requirements[3]; (2) whether a Qatari court will render a custody determination in the best interests of the children; (3) and whether the Family Part should exercise emergency jurisdiction in light of the allegations of abuse to defendant and either of the parties' children. See N.J.S.A. 2A:34-68(a) ("A court of this State has temporary emergency jurisdiction if the child is present in this State and the child has been abandoned or it is necessary in an emergency to protect the child because the child, or a sibling or parent of the child, is subjected to or threatened with mistreatment or abuse." (Emphasis added)); see also Benda v. Benda, 236 N.J. Super. 365, 368 (App. Div. 1989) (demonstrating that a plenary hearing is typically needed to resolve a dispute about emergency jurisdiction). Thereafter, the judge shall issue detailed written or oral findings of fact and conclusions of law consistent with Rule 1:7-4.

---

[3] "[A]t a minimum, due process requires that a party in a judicial hearing receive 'notice defining the issues and an adequate opportunity to prepare and respond.'" J.D. v. M.D.F., 207 N.J. 458, 478 (2011) (emphasis added) (quoting H.E.S. v. J.C.S., 175 N.J. 309, 321 (2003)); see also N.J.S.A. 2A:34-57(a) ("A court of this State shall treat a foreign country as if it were a state of the United States for the purpose of applying articles 1 and 2 of this act if the foreign court gives notice and an opportunity to be heard to all parties before making child custody determinations." (Emphasis added)).

A-5287-18T3

The order denying consideration is reversed, the order directing the children be returned to Qatar is vacated, and the matter is remanded for a plenary hearing to be held within sixty days.[4]

Reversed in part, vacated in part, and remanded for further proceedings consistent with our opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

---

[4] We recognize that at present, most in-court appearances have been suspended due to a pandemic. We leave it to the trial judge's discretion to complete the remand proceedings through virtual or telephonic conferencing, or to wait to complete the remand hearing within sixty days of the resumption of in court appearances.

A-5287-18T3